OPINION OF THE COURT
Anthony P. Savárese, J.
The defendant, James Young, is charged with criminal possession of a weapon in the third degree and criminal possession of a controlled substance in the fifth degree, under *711 Indictment No. 8022/78. He is also charged, under Indictment No. 8023/78, with criminal possession of a controlled substance in the second degree, criminally possessing a hypodermic instrument and with a violation of section 1163 of the Vehicle and Traffic Law.
The defendant moved on papers to suppress physical evidence taken from his car and from his person. Upon learning of statements allegedly made by him, the defendant moved orally, with consent, to suppress the statements.
A hearing was held before me on October 6, 1978, at which time Police Officer Robert Garbus testified. His testimony was not successfully challenged or controverted.
Based upon all of the credible evidence adduced, I make the following findings of fact and reach the following conclusions of law:
On December 29, 1977, at approximately 8:50 p.m., Officer Garbus was on patrol with Detective Morgan and Police Officer Esty in an unmarked police car, acting as a street crime unit. The officer observed the defendant driving a Dodge with rental plates, heading north on Merrick Boulevard. There was a passenger in the front seat of the vehicle. The defendant made a right turn without giving the appropriate signal. The officers pulled alongside of the defendant’s vehicle at 169th Street and showed the defendant a sign identifying themselves as police officers. The defendant pulled over to the side of the road and the officers’ vehicle stopped alongside of it, the passenger side of the unmarked car situated next to the driver’s side of defendant’s vehicle.
Officer Garbus exited the right rear door of the police vehicle. He held his shield out as he approached the defendant’s car. When he was approximately one foot away from the driver’s side of the car, Garbus saw both the defendant and the passenger bend over as if they were placing something or removing something from under the front seat. The officer drew his revolver and said, "Police, don’t move”. He then opened the door of the car and had the defendant step out. Detective Morgan, located at the passenger side of the car, removed the passenger from the vehicle. Officer Esty looked under the front seat and found a gun under the driver’s seat and 11 envelopes of alleged heroin under the passenger seat. Upon hearing Esty say, "I have a gun”, Garbus handcuffed Young and searched him. He found 25 glassine envelopes, allegedly containing heroin, in the defendant’s sock and one *712 such envelope in defendant’s hatband. A black purse, containing a hypodermic instrument and other paraphernalia, was found in the defendant’s right rear pocket.
The defendant was taken to the 103d Precinct, arriving at approximately 9:00 p.m. There he was placed in the sitting room where he was advised of his Miranda warnings. After each of the warnings, the defendant was asked if he understood and he answered that he did. After all of the warnings were read, the defendant was asked if he wished to make a statement without the presence of an attorney. He stated that he wished to do so. He then stated that the 26 glassine envelopes found on his person were for his own use, that he purchased them in South Jamaica and he was a user. He denied possession of the 11 envelopes and gun found in the car.
The defendant contends that the physical evidence was seized as a result of an unlawful police search of the car and his person. This compels a review of the police action from the inception, for if it was excessive and unreasonable, any evidence seized thereby must be suppressed. (See People v Cantor, 36 NY2d 106; People v Ingle, 36 NY2d 413; see, also, People v Sobotker, 43 NY2d 559.)
An automobile on a public highway may be stopped for the purpose of a traffic check if a police officer reasonably suspects it is being driven in violation of the Vehicle and Traffic Law. (People v Ingle, supra.) In this case, the credible evidence established that the driver made an improper turn and that this prompted the police to pull him over. That action not only was authorized under Ingle, but entitled the officer to order the occupants out of the car. (Pennsylvania v Mimms, 434 US 106; People v Diaz, 41 NY2d 876; People v Bryant, 59 AD2d 721.) It remains to decide if the officer could do so at gunpoint.
This obliges the court, in the sterilized security of library and chambers, not only to reconstruct the circumstances from the one-sided testimony before it, but to declare an acceptable standard of behavior for a police officer on the scene, faced with a split-second choice upon which his and other lives may depend.
There are no "automobile” cases which bridge the gap from inviting the occupants to leave the vehicle to ordering them out at gunpoint. The United States Supreme Court in Mimms, *713 however, observed (p 110) that it is necessary to appreciate "the inordinate risk confronting an officer as he approaches a person seated in an automobile”.
Reasonably restrained police action has been sustained, although taken at gunpoint. (See People v Ahearn, 59 AD2d 764; see, also, People v Huffman, 41 NY2d 29.)
In the instant case, the police first signified their intentions by pulling alongside and exhibiting a sign to the defendant identifying themselves. When the vehicles stopped, the officer emerged from the passenger side of the police car and approached the driver’s side of the subject car, exhibiting his police shield before him. To this point, there was nothing heavy-handed in the police action.
It is not clear how much distance separated the two cars, but it is reasonably inferable that in event of trouble the avenues of retreat open to the officer were circumscribed by the position of the police car at his back.
The actions of the driver and passenger when the officer was approximately one foot from the driver’s window, afforded the officer reasonable and articulable grounds to believe his life was in danger. Thus, if it would have been reasonable for him to have ordered the occupants out of the car in anticipation of danger under Mimms, Diaz and Bryant (supra), clearly it was reasonable for him to do so at gunpoint in these circumstances. (See, also, People v Ahearn, supra.)
Immediate search thereafter of the floor area under the front seat was also appropriate and has been upheld under similar circumstances in People v McKnight (26 NY2d 1034). (See, also, People v Cruz, 34 NY2d 362.)
The handcuffing and arrest which followed discovery of the gun and other contraband on the floor of the car was, of course, proper and the search of the defendant’s person immediately thereafter was valid as incident to a lawful arrest. (People v Loria, 10 NY2d 368.)
In sum, absent any inferences from the officer’s testimony or evidence by the defendant to suggest that the stop and ultimate drawing of the police officer’s gun were unwarranted, unreasonable, unprovoked or deliberately and unnecessarily "strong-arm” in character, this court finds the officer’s actions properly responsive to the circumstances as they unfolded. In this case, to repeat a cliché, it was "better to be safe than sorry”, particularly when the pointing of the gun subjected *714 the defendant to no greater restraint of liberty than a mere direction to exit the car, already sanctioned by the cases.
There remains the issue of the voluntariness of the statements sought to be suppressed. The court finds the necessary warnings to have been properly given under Miranda and cases following and that the People have met their burden of showing that the defendant knowingly, intelligently and voluntarily waived his privilege against self incrimination and his right to counsel.
Accordingly, the motions to suppress statements and physical evidence seized from his person and the automobile he was driving, are in all respects denied.