UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Glenn MOORE, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Michael ENGLISH, Defendant-Appellant.

Nos. 79–1416, 79–1417.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 10, 1980.

Decided Aug. 14, 1980.

Rehearing Denied Oct. 22, 1980.

J. William Beard, Jr., La Jolla, Cal., Michael J. McCabe, San Diego, Cal., for defendants-appellants.

Raymond Edwards, Jr., Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before CHOY, ANDERSON and PREGERSON, Circuit Judges.

CHOY, Circuit Judge:

On stipulated facts, Moore and English were convicted of conspiracy and making false statements to customs officers, 18 U.S.C. § 1001; Moore was also convicted of bringing more than $5,000 cash into the country without reporting it, 31 U.S.C. § 1101. We affirm.

## I. *Statement of the Case*

Experienced government agents manning a radar screen detected an unidentified object, apparently an aircraft, crossing from Mexico into the United States at approximately 200 miles per hour. One of the agents called the local airport it was nearing and specified its location; the control tower identified it as appellants' small airplane. The police were called. The plane landed; appellants emerged and got into a taxi. Policemen approached the taxi from behind with guns ready, but it started to drive off. The policemen raised their guns, and the taxi halted. Appellants were frisked and told, "We are just detaining you for customs, and this is a routine pat-down." They were then placed in the caged rear seat of a police car.

A few minutes later, customs officers arrived by plane and appellants were moved to the airport manager's office. Without giving *Miranda* warnings, a customs officer asked appellants if they had anything to declare from Mexico. They falsely replied that they had not been into Mexico, then lied that they had come from New Mexico and had only been forced into Mexican airspace by bad weather. Officers made a warrantless search of appellants' airplane and luggage and found $20,000. The appellants were later given *Miranda* warnings and formally arrested.

## II. *Warrantless Search at the "Extended Border"*

 No warrant or probable cause is required for customs searches at the border. *Shorter v. United States*, 469 F.2d 61, 63 (9th Cir. 1972), *cert. denied*, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973). The same is true of customs searches made at the functional equivalent of the border. *United States v. Potter*, 552 F.2d 901, 907 (9th Cir. 1977). The first United States point at which an international flight lands is the functional equivalent of the border. *Id.* Essentially continuous surveillance of a vehicle, or similar information that establishes to a reasonable certainty that it crossed the border and that any contraband found was aboard when the border was crossed, brings a case within this category of "extended border searches." *See id.*; *Castillo-Garcia v. United States*, 424 F.2d 482, 485 (9th Cir. 1970). The facts of this case evince an even higher degree of certainty than that.

The government agents continuously and reliably tracked the radar blip that represented appellants' plane. They could not have confused it with any other aircraft represented on the radar screen. As the plane approached Palomar Airport, near Carlsbad, California, the agents learned from the Palomar control tower that the plane represented by the blip was appellants' twin-engine Aztec. The control tower then brought the Aztec in and watched appellants emerge.

The tower quickly corrected its initial confusion of the plane in question with a single-engine Cherokee that was nearer the airport. The agents continued to track the blip until the plane was in the Palomar landing pattern and its location and true identity had been confirmed by the tower. Moreover, the blip the agents had been tracking could not have represented the Cherokee, because a Cherokee cannot fly as fast as the tracked plane was flying. Thus, this momentary confusion did not vitiate the required reasonable certainty that the radar blip represented appellants' plane.

 It is of course not necessary for customs agents actually to view the airplane crossing the border and proceeding into the United States. *See United States v. Ingham*, 502 F.2d 1287, 1290 (5th Cir. 1974), *cert. denied*, 421 U.S. 911, 95 S.Ct. 1566, 43 L.Ed.2d 777 (1975). The reliable technology used by the agents in this case was more than acceptable. *See United States v. Potter*, 552 F.2d at 906–07.

To determine the location of objects that caused blips to appear on the radar screen, the agents relied on a National Oceanographic Service video map, showing the location of geographical features and international boundaries, that was superimposed on the radar screen. Proof that appellants' plane was in Mexico, crossed the border,

and proceeded to Palomar depends in large part on the accuracy of the map. The map's accuracy was sufficiently proved by the testimony of an expert in radar and air traffic, and the FAA manual he based his opinion on did not have to be admissible itself. Fed.R.Evid. 703. Appellants' hearsay objection below concerned the expert's declaration regarding the manual, not (as they assert in their reply brief here) the agent's declaration of the expert's statements. Appellants waived the latter hearsay objection below by stipulating that the expert be deemed to have been called, duly sworn and testified in accordance with the information he gave the agent.

■ We conclude that the search was made at the functional equivalent of the border, and that no warrant or probable cause was required.

III. *Stop and Detention Without Probable Cause*

Appellants claim that they were arrested without probable cause, and that all evidence subsequently obtained must be suppressed as the fruit of a poisonous tree. They were not arrested, however, but were subjected to a brief "forcible stop" designed to "maintain the status quo momentarily," *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). If entrants such as appellants could not be stopped and briefly detained against their will pending customs officers' arrival and examination at the extended border, our customs laws could not be enforced. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973) ("national self protection" permits entrants to be "stopped" at border to stem the flow of contraband); *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975) ("stops" necessary to enforce immigration laws). If reasonable suspicion to support this stop and detention was required, it was supplied by appellants' failure to report their entry and land at a designated airport for customs processing. *Cf. United States v. Martinez-Fuerte*, 428 U.S. 543, 562, 96 S.Ct.

3074, 3085, 49 L.Ed.2d 1116 (1976) (no individualized suspicion needed for stops at border checkpoints).

■ The policemen's show of force was precipitated by the action of the taxi driver, and was necessary to prevent the appellants from being driven away; it did not transform the stop into an arrest. *See United States v. Thompson*, 558 F.2d 522, 524 (9th Cir. 1977) (policeman drew gun when van began to drive away), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); *United States v. Richards*, 500 F.2d 1025, 1028–29 (9th Cir. 1974) (agent drew gun on airplane preparing to take off), *cert. denied*, 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975). *See also United States v. Beck*, 598 F.2d 497, 500 & n.1, 501 (9th Cir. 1979). Under the totality of the circumstances, the conduct of the police was reasonable. The policemen knew that appellants were suspected smugglers, and could not be certain that they were unarmed. After appellants had been frisked, the policemen holstered their guns.

The police promptly and correctly informed appellants that, rather than being arrested, they were being detained for U.S. Customs. We have approved such detentions pending the arrival of specialized officers. *See United States v. O'Looney*, 544 F.2d 385, 389 (9th Cir.) (ATF agents), *cert. denied*, 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976). Moreover, such verbal denial of arrest tends to disprove arrest. *United States v. Richards*, 500 F.2d at 1029.

■ Since it was necessary that appellants be secured until the customs officers arrived, it was not unreasonable to place them in the caged police car. If a man is not free to go, the use of any reasonable means to secure him does not promote what would otherwise be a mere detention into an arrest. *See United States v. Thompson*, 597 F.2d 187, 190 (9th Cir. 1979) (handcuffs); *People v. Young*, 96 Misc.2d 710, 409 N.Y.S.2d 625, 628 (Sup.Ct.1978) (gun). *See also United States v. Perez-Esparza*, 609 F.2d 1284, 1287 n.2 (9th Cir. 1979) (suggesting that police motivation may be determin-

ing factor); *United States v. Chamberlin*, 609 F.2d 1318 (9th Cir. 1979) (where only a momentary detention is permitted, a longer detention is invalid unless supported, like an arrest, by probable cause or consent). The mode of detention here was not unreasonable under these particular circumstances.

The further detention of appellants after the customs officers arrived was, as a reasonable man would have understood, not an arrest but a typical administrative detention pursuant to a customs examination.

IV. *Failure to Give Miranda Warnings*

█ The false statements for which appellants were convicted were made without benefit of *Miranda* warnings. Government agents questioning an entrant at the border need not give *Miranda* warnings "unless and until the questioning agents have probable cause to believe that the person questioned has committed an offense, or the person questioned has been arrested, whether with or without probable cause." *Chavez-Martinez v. United States*, 407 F.2d 535, 539 (9th Cir.), *cert. denied*, 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 109 (1969). Since we hold that appellants were not arrested until after the statements challenged here were made, the issue is whether the questioning customs officer had probable cause.[1]

█ When the customs officer first approached and began questioning appellants, there was no probable cause to believe that appellants had committed a crime. The officer could not have had probable cause to believe that appellants had violated 19 U.S.C. § 1459 (failure to report arrival of vehicle containing merchandise), because their airplane was not a "vehicle," *see* 19 U.S.C. § 1401(b), and he did not know whether appellants were carrying "merchandise" (in fact, they were not); therefore appellants' failure to report their arrival was not illegal. Even if the officer believed that appellants had violated the civil

regulations promulgated under authority of 19 U.S.C. § 1624, these were not "crimes." *See* 19 C.F.R. § 6.11. And although conspiracy to violate those regulations is a crime, there was no probable cause to believe that the airplane's two occupants were conspiring, even if there was cause to believe that one occupant intended to and did violate the regulations. Therefore, the customs officer had no probable cause, and did not have to give *Miranda* warnings, when he arrived and directed his questions to appellants.

He first asked them if they had anything to declare from Mexico; they said that they had not been into Mexico. The officer contradicted them, and they replied that they had flown nonstop from Sunland Park, New Mexico, and had only veered into Mexican airspace to avoid a weather front.

Before, and even after, these statements, the officer did not yet have probable cause. A prudent man would not jump to the conclusion that appellants were liars and criminals; he would first determine whether they had a plausible explanation, consistent with innocence (as in fact they claimed to). Although the officer may have been suspicious, he did not yet have facts and circumstances within his knowledge and of which he had reasonably trustworthy information sufficient to warrant a prudent man in believing that appellants had committed a crime. *See United States v. Avalos-Ochoa*, 557 F.2d 1299, 1302 (9th Cir.) (definition of probable cause), *cert. denied*, 434 U.S. 974, 98 S.Ct. 532, 54 L.Ed.2d 466 (1977). Therefore, appellants' fatal statements were made before probable cause arose.

V. *Sufficiency of the Evidence*

Appellants claim that their statements that they had not been into Mexico cannot be used to convict them under § 1001, because an answer of "yes" or silence to the question whether they had anything to declare would have tended to incriminate

---

1. The questioning here occurred as appellants stood outside the terminal building and in the airport manager's office; the situation itself was not so coercive or "police dominated" as,

without more, to bring *Miranda* concerns into play. *See United States v. Hickman*, 523 F.2d 323, 326–27 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976).

them; thus, they say, they were entitled to respond with an "exculpatory 'no.'" It is doubtful whether the "exculpatory 'no'" defense has any validity within this Circuit, see *United States v. Rose,* 570 F.2d 1358, 1364 (9th Cir. 1978); *United States v. Goldfine,* 538 F.2d 815, 820–21 (9th Cir. 1976); *United States v. Ratner,* 464 F.2d 101, 103–05 (9th Cir. 1972). We need not reach the issue, however, because appellants did more than merely say no, they had nothing to declare; they offered the affirmative, unsolicited statements that they had not been into Mexico and that they had flown from Sunland Park, New Mexico.

■ The stipulated facts amply demonstrate that these statements were false. The statements, if believed, would have enabled appellants and any contraband they might have been carrying to enter the country without rigorous examination; thus they potentially impaired the function of the customs service and violated 18 U.S.C. § 1001. *United States v. Rose,* 570 F.2d at 1364.

### VI. *Conclusion*

No warrant or probable cause was required for the search of appellants' airplane and luggage, because the search occurred at the "extended border." Because the detention of appellants was merely a permissible "stop," not an arrest, no evidence must be excluded. It was not necessary for *Miranda* warnings to precede the questions that elicited appellants' false statements. The evidence supported the convictions.

AFFIRMED.

PREGERSON, Circuit Judge, concurring specially:

The record satisfies me that the defendants' actions, taken after the airplane landed, justified the precautionary measures taken by the officers, although at first blush those measures seemed excessive. Because those measures were justified, an arrest did not take place. Therefore, I concur in the result.