UNITED STATES of America,
Plaintiff-Appellant,

v.

Michael Edward O'CONNOR and Charles
Cary Davis, Defendants-Appellees.

No. 80–1487.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1981.

Decided Oct. 5, 1981.

Rehearing Denied Dec. 17, 1981.

Alan R. Freedman, Asst. U. S. Atty., Las Vegas, Nev., for plaintiff-appellant.

Paul J. Schofield, Louis Wiener, Las Vegas, Nev., argued, for defendants-appellants; William R. Pritchard, Las Vegas, Nev., on brief.

Before SKOPIL and BOOCHEVER, Circuit Judges, and TAYLOR,* Senior District Judge.

BOOCHEVER, Circuit Judge:

On April 23, 1980, Michael O'Connor and Charles Davis were indicted for possession with intent to distribute fifty-four ounces of cocaine. They filed motions to suppress the cocaine contending that it had been illegally seized from Davis. Following an evidentiary hearing, the district court granted the motion to suppress finding that government agents lacked probable cause to seize a briefcase in which the cocaine was found. The government has appealed and we reverse.[1]

In June 1979, the Internal Revenue Service began an investigation of illegal wagering activities in Las Vegas. The investigation revealed a gambling operation involving a large number of people including David Cutter and O'Connor. On March 22, 1980, government agents, pursuant to a search warrant, searched Cutter and found a key to Room 605 of the Aladdin Hotel.

After discovering the key, the agents went to Room 605 and knocked on the door. O'Connor answered the door, but refused to allow the agents to search the room. Because the agents believed that O'Connor was conducting bookmaking activities in the room, they placed the room under surveillance.

Thereafter, agents observed two other suspects in the bookmaking operation leave the room. The agents also investigated the room's telephone records. This information, combined with the other previously gathered information, led the agents to conclude that bookmaking operations were being conducted in the room. Consequently, they sought warrants to search the room and the persons of O'Connor and Cutter.

While waiting for the warrants to be issued, an agent saw two men leave the vicinity of the room in rapid succession.[2] The agent thought that the first man to leave was O'Connor and the second was Cutter. The first man got into a cab and it drove off; the second man drove off in a private car. The agent could not tell whether the men were carrying anything with them as they left the room.[3]

Because they feared that their surveillance had been detected and the men might be removing evidence, the agents followed the cab and the car although they eventually lost the car. During the thirty-five minutes that Agent Kindt followed the cab, it drove evasively. While the cab was being followed, the search warrants were issued and, upon learning this, Kindt ordered the cab to stop.

Kindt walked to the cab and identified himself, but was surprised to discover the passenger was Davis, not O'Connor. In an

---

* The Honorable Fred M. Taylor, Senior District Judge, District of Idaho, sitting by designation.

1. Although the government conceded in the district court that O'Connor had standing, it argues on appeal that O'Connor lacks standing to object to the seizure of Davis's briefcase on the basis of *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). *But see Steagold v. United States*, — U.S. —, 101 S.Ct. 1642, 1646–47 & n.5, 68 L.Ed.2d 38 (1981). Given our disposition, we need not

consider whether the government has waived its right to raise the standing issue.

2. Davis was observed in the vicinity of Room 605 but not exiting it. Davis later admitted he was in Room 605.

3. According to testimony at the suppression hearing, Davis was not observed carrying any items.

effort to determine whether he had been following the wrong cab, Kindt asked Davis whether he had just come from Room 605. Davis said he had. Kindt testified that he had no information about Davis and did not have probable cause to believe that he had committed any crime. Because Kindt suspected that Davis took bookkeeping records out of the room, Kindt returned with Davis to Kindt's car where he questioned him regarding his reason for going to Room 605.

Meanwhile a second agent, who had arrived at the scene of the stop, interviewed the cab driver. Agent Stewart told Kindt that the driver said, "Yes, you can search the back of the cab, but my passenger told me not to let you have the briefcase." A few minutes later, Davis refused to claim ownership of the briefcase, but, nevertheless, refused to give his consent to its search, and stated that the combination was at home.

Agent Kindt then informed Davis that he was going to take the briefcase back to Room 605 of the Aladdin Hotel, where the other agents were already conducting the search authorized by the warrant. Agent Kindt told Davis he was taking the briefcase "no matter what he did" and asked Davis if he wished to accompany them back to the room. Davis acquiesced, saying, "You're the boss." Kindt explained to Davis that he was not under arrest, but Davis still agreed to accompany the agents back to Room 605.

The agents retained custody of the briefcase overnight and applied for a search warrant the next day. The search warrant affidavit recounted the above facts and said that Davis gave the cab driver $100 to lose the car following him. A warrant was issued on the same day and the briefcase was opened and searched. The search revealed fifty-four ounces of cocaine.

Following an evidentiary hearing, the district judge ordered the cocaine suppressed. Although the judge made no findings of fact or conclusions of law, he made several comments in the course of the hearing that suggest the grounds for his decision. The judge focused primarily on whether the seizure of the briefcase from Davis was supported by probable cause. The judge stated that if O'Connor rather than Davis had been in the cab, the agents probably would have had cause to seize the briefcase. Because the passenger in the cab was Davis, the court stated that it was doubtful that the agents had probable cause.

## I. STANDARD OF REVIEW

The underlying facts leading to a probable cause determination are subject to the clearly erroneous standard of review. There has been some confusion, however, over the question of whether this standard should be applied to a judge's ultimate determination of probable cause.[4] We have held en banc, that ultimate findings of fact in pre-trial criminal rulings are reviewed as questions of fact, not law, *United States v. Hart*, 546 F.2d 798, 801–02 (9th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977) and this holding is applicable to probable cause determinations.[5]

---

**4.** See *United States v. Flickinger*, 573 F.2d 1349, 1356 n. 2 (9th Cir.), *cert. denied*, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978).

**5.** The Ninth Circuit cases holding that the ultimate finding of probable cause is reviewed under the clearly erroneous standard are legion. For cases concerning probable cause to arrest, see: *United States v. Franco*, 638 F.2d 1206, 1208 (9th Cir. 1980); *United States v. Jones*, 612 F.2d 453, 456–57 (9th Cir. 1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980); *United States v. Beck*, 598 F.2d 497, 501 (9th Cir. 1979); *United States v. Martin*, 587 F.2d 31, 33 (9th Cir. 1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459

(1979) ("viewing the facts in the light most favorable to the government . . ., we find the determination of probable cause for arrest was not clearly erroneous."); *United States v. Jackson*, 544 F.2d 407, 410–11 (9th Cir. 1976) For cases concerning probable cause to search, see: *United States v. Whitney*, 633 F.2d 902, 908 (9th Cir. 1980); *United States v. Thompson*, 558 F.2d 522, 524–25 (9th Cir. 1977), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); *United States v. Patterson*, 492 F.2d 995, 996 (9th Cir.), *cert. denied*, 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75 (1974). For cases concerning probable cause to detain (founded or reasonable suspicion), see: *United States v. Huberts*, 637 F.2d 630, 635 (9th Cir.

The Supreme Court, however, has admonished:

> While this Court does not sit in *nisi prius* to appraise contradictory factual questions, it will where necessary to the determination of constitutional rights, make an independent examination of the facts, the findings, and the record so that it can determine for itself whether in the decision as to reasonableness the fundamental—i. e. constitutional—criteria established by this Court have been respected.

*Ker v. California*, 374 U.S. 23, 33–34, 83 S.Ct. 1623, 1629–30, 10 L.Ed.2d 726 (1963).

■ In this case, the only witnesses testifying regarding the seizure were government agents. The trial court did not doubt the veracity of their testimony. Thus, the basic facts are free from doubt and the question presented for review is whether the determination on the ultimate issue of probable cause was clearly erroneous.

We have independently reviewed the record in this case. Our review leads us to conclude that it was clearly erroneous for the trial court to hold that there was no probable cause to seize the briefcase.

## II. THE STOP OF THE CAB

■ The appellees initially contend that the agents did not have probable cause to stop the cab. At the time of the stop, the agents possessed a warrant to search the person of O'Connor and the validity of the warrant is not contested. It is obvious that in executing the warrant, the agents could stop the vehicle in which they reasonably thought O'Connor was a passenger. That

their good faith belief was incorrect does not make the stop invalid. *See Hill v. California*, 401 U.S. 797, 803–05, 91 S.Ct. 1106, 1110–1111, 28 L.Ed.2d 484 (1971). The district court properly rejected this argument.

■ The appellees next contend that once the agent discovered that the passenger was Davis, not O'Connor, there was no justification for Kindt's questioning of Davis. The government contends that limited questioning was permissible under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such a detention may be based on a lesser quantum of evidence than the probable cause necessary for arrest and requires a reasonable suspicion that illegal activity is occurring or is contemplated. *United States v. Orozco*, 590 F.2d 789, 792 (9th Cir. 1979) *cert. denied*, 439 U.S. 1049, 99 S.Ct. 728, 58 L.Ed.2d 709 (1978). Under the facts as outlined above, the agent was clearly justified in asking Davis whether he came from Room 605 if only to determine whether the wrong person had been followed. After learning that Davis had come from Room 605, the agent was justified in asking further questions, particularly in view of the evasive action taken by the cab.

■ The appellees also contend that Davis was arrested without probable cause and, thus, the evidence obtained from the briefcase must be suppressed as a fruit of the unlawful arrest. We reject this argument because we believe that the facts demonstrate that Davis was not under arrest. *United States v. Beck*, 598 F.2d 497, 501 (9th Cir. 1979). The determination is to be made considering all the surrounding

1980); *United States v. Gabriel*, 625 F.2d 830, 833 (9th Cir. 1980) (concurring opinion); *United States v. Perez-Esparza*, 609 F.2d 1284, 1285–86 (9th Cir. 1980); *United States v. Post*, 607 F.2d 847, 849 (9th Cir. 1979); *United States v. Cortez*, 595 F.2d 505, 507 (9th Cir. 1979), *rev'd on other grounds* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). *But see United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106, 1108–09 (9th Cir. 1976); K. Davis, Administrative Law Text §§ 29.01–30.07 (3d ed. 1972). In *United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106 (9th Cir. 1976), a panel held, in a forfeiture proceeding context, that the ultimate finding of probable

cause was a legal question. The continued validity of that case is questionable in light of the subsequent *en banc* decision in *Hart*. Moreover, since the *Hart* case was decided, only two Ninth Circuit opinions have cited *Beech* for the proposition that review is not under the clearly erroneous standard and neither of those cases was required to decide the issue because they held the probable cause finding was correct. *See United States v. Stanley*, 545 F.2d 661, 664 (9th Cir. 1976), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978); *United States v. Chesher*, 654 F.2d 1285 (9th Cir. 1981).

circumstances and ultimately depends upon whether the average person, innocent of crime, would reasonably think that an arrest was being made. *Id., see also United States v. Johnson*, 626 F.2d 753, 755 (9th Cir. 1980). The primary factor is "whether or not the defendant was free to choose between terminating or continuing the encounter . . . ." *Id.* The appellees contend that "the arrest of . . . Davis took place when the taxicab was stopped," apparently because when the cab was stopped, it was hemmed in by three government vehicles. Such a show of force did not transform the stop into an arrest. *See United States v. Moore*, 638 F.2d 1171, 1174 (9th Cir. 1980) *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981) (pointing guns at taxi to halt it did not constitute arrest). The agents did not draw their guns or restrain or even frisk Davis. Moreover, the statement by Kindt to Davis that he was not under arrest tends to disprove arrest. *See id.; United States v. Richards*, 500 F.2d 1025, 1029 (9th Cir. 1974), *cert. denied*, 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975). We hold that Davis was not under arrest.

## III. THE SEIZURE OF THE BRIEFCASE

The district court ruled that the seizure of the briefcase was without probable cause and therefore unlawful. The government contends on appeal that seizure was supported by probable cause.[6] We believe the

---

**6.** We reject the government's initial argument that because the agents merely detained the briefcase temporarily pending the application for a warrant to search it, the seizure can be justified on less than probable cause. The government confuses the probable cause requirement with that of exigent circumstances justifying a search without a warrant. Both a search and seizure require the same quantum of probable cause. Probable cause, alone, however justifies neither a search or seizure without a warrant in the absence of exigent circumstances. In this case there were exigent circumstances to seize the briefcase, because it might have disappeared while agents obtained a warrant, but there were no exigent circumstances that would justify a search. Seizure of items such as briefcases or luggage do not justify the added invasion of privacy involved in a search, unless a warrant is secured from a disinterested magistrate or exigent circumstances require an immediate search. The government relies upon *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). In *Van Leeuwen*, a police officer and postal clerk temporarily detained two packages placed in the mail pending an investigation which provided probable cause to obtain a search warrant. We believe that *Van Leeuwen* is clearly distinguishable for the reasons expressed by the Fifth Circuit in *United States v. Hunt*, 496 F.2d 888, 893 (5th Cir. 1974):

In *Van Leeuwen*, however, the policeman merely removed the suspected parcels from the normal flow of the mails when they were initially deposited, and replaced them after inspection in order for them to proceed on to their destination. In the instant case, the boxes were not simply removed from the normal flow of the mails, but were seized after they had reached their destination, were claimed by defendant Kolb and two of the boxes were actually in his physical possession while the remaining four were in the process of being loaded on his truck. It was not until the boxes were actually within the recipient's possession, or at least his control, that the government agents made their move and seized them. This difference, we think, takes the seizure of the six boxes outside the scope of the temporary detention recognized in *Van Leeuwen*.

Moreover, neither *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) nor *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), provide support for the government's rather novel theory that an item may be seized without probable cause pending an application for a search warrant. In fact, the Court in *Sanders* stated: "Having probable cause to believe that contraband was being driven away in the taxi, the police were justified in . . . seizing the suitcase they suspected contained contraband." *Sanders*, 442 U.S. at 761, 99 S.Ct. at 2592. The police, however, were not justified in opening the suitcase because once it was in their possession and control exigent circumstances were lacking. *Id.* at 761–62, 99 S.Ct. at 2591–92.

A seizure has been defined as the "act of physically taking and removing tangible personal property." 1 W. LaFave, *Search and Seizure*, § 2.1 at 221 (1978). The agents here took physical control of the briefcase which was in Davis' possession. It clearly constituted a seizure within the meaning of the Fourth Amendment and, thus, can be justified only if supported by probable cause. *Hunt*, 496 F.2d at 892. *But cf. Michigan v. Summers*, —— U.S. ——, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (because the Supreme Court held that an occupant who was descending from the porch of a house for which a search warrant has been

government is correct and hold that the district court's conclusion was in error.

■ The following facts demonstrate that there was probable cause to seize the briefcase.[7] In the course of investigating illegal wagering activities, the investigation focused on Room 605. At that time, the agents knew a large number of people were involved although they did not know all the participants. On the date of the seizure, the agents observed several gambling scheme suspects around Room 605. A search warrant was prepared and at about 6:00 p. m. the field agents learned that the application was being presented to a magistrate and that the warrants would be available shortly. At about the same time, the field agents believed that their surveillance had been discovered. Almost immediately thereafter, the agents saw two men leave the vicinity of the room. Kindt followed the man who looked like O'Connor. The cab, in which the man rode, drove in an evasive fashion. After the stop of the cab, Kindt learned that although Davis was not O'Connor, he had been in Room 605. The cab driver stated that Davis had told him to drive evasively and not to let the agents have the briefcase. Upon questioning, by Kindt, however, Davis was reluctant to admit any knowledge of the briefcase.[8] It is clear that if the briefcase had been present in Room 605 at 6:30 p. m. when the warrants arrived, it could have been searched because of the likelihood it contained evidence of bookmaking. *See United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970). Under the totality of these circumstances, it was clearly erroneous to hold that the agents lacked probable cause to seize the briefcase in the belief that it contained evidence of illegal bookmaking.

■ Because there was probable cause to seize the briefcase, the agents could lawfully retain custody while securing a search warrant. *Arkansas v. Sanders*, 442 U.S. 753, 761–62, 99 S.Ct. 2586, 2591–92, 61 L.Ed.2d 235 (1979). The agents acted in an exemplary manner in securing the warrant before making their search. The appellees do not contest the validity of the warrant authorizing the search of the briefcase. The search and seizure being lawful, the cocaine found in the briefcase should not have been suppressed. The order of the district court granting the appellees' motion to dismiss is reversed and the cases are remanded to the district court for further proceedings.

---

issued may be detained and brought into the house, a different analysis may be foreshadowed).

7. Because we have decided that Davis was not under arrest, we need not address the difficult question of whether there was probable cause to arrest. Although courts have generally assumed that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to seize items found with a person, the same evidence may justify one but not the other. *See generally*, 1 W. LaFave, *Search and Seizure*, § 3.1, at 441–43 (1978); W. Ringel, *Searches & Seizures, Arrests and Confessions*, § 4.1(a) (2ed 1980). Probable cause to arrest concerns the guilt of the arrestee, whereas probable cause to search an item concerns the connection of the items sought with crime and the present location of the items. *Id.* Several cases have held that probable cause to search or seize existed even though probable cause to arrest did not. *See e. g. U. S. v. Melvin*, 596 F.2d 492, 495–96 (1st Cir. 1979); *Commonwealth v. Pignone*, 332 N.E.2d 388 (Mass.1975). In *Pignone*, a grocery store manager noticed that a cashier rang up a bill of $4.42 although the customer left with seven bags of groceries. The manager called the police and after their arrival, the cashier admitted guilt. Thereafter, the officers, upon learning the location of the customer's car, seized the groceries from the car. The court held that there was probable cause to seize the groceries as the fruits or evidence of the crime whether or not the police had probable cause to believe that the customer was an accomplice to the theft.

8. *See United States v. Richards*, 500 F.2d 1025, 1029 (9th Cir. 1974), *cert. denied*, 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975) (implausible and evasive responses during an investigative stop provide further probable cause). The appellees do not contend that these statements were taken in violation of Davis' *Miranda* rights. *Cf. United States v. Moore*, 638 F.2d 1171, 1175 (9th Cir., 1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981) (*Miranda* warnings need not be given until the person questioned is arrested or there is probable cause to arrest).