Filed 1/20/23  P. v. Reyes-Gutierrez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C094718 |
| v. | (Super. Ct. No. CRF1901083) |
| JOSE REYES-GUTIERREZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Jose Reyes-Gutierrez of rape of an intoxicated person and unlawful sexual intercourse with a minor.  The trial court sentenced defendant to six years in state prison.

Defendant now contends (1) the trial court should have suppressed defendant's apology letters that were found in a customs search of his backpack as he returned from Mexico, and (2) there is insufficient evidence to support his convictions.  Because we agree there is insufficient evidence to support the conviction for unlawful sexual intercourse with a minor, we will reverse that conviction and otherwise affirm the judgment.

1

BACKGROUND

On June 9, 2019, defendant hosted a graduation party at his house for his son and his niece. Defendant was 55 years old at the time; his son was 18 years old and his niece was 17 years old. Family and friends attended the party.

Jane Doe and her friend H.L. attended the party. They had just completed their junior year in high school. Doe was 17 years and two months old. Others at the party ranged in age from 16 to 18. Some were juniors and many were graduating seniors.

Doe said she first saw defendant at the son's graduation ceremony, but they were not introduced. She was introduced to defendant at the party and he described the food to her, but they did not otherwise converse.

According to Doe, she drank five beers and a shot of alcohol within two hours that evening. Another party guest saw Doe drinking from a Smirnoff bottle. Doe said she felt drunk and ill and could not keep her balance. Other witnesses said Doe started slurring her words and could not walk straight. Her friends helped her to a bathroom where she threw up and urinated on herself and the floor. The friends then helped Doe into a spare bedroom and helped her change her clothes. Feeling dizzy, Doe reclined on the bed. Doe said her friends left the room.

Doe testified that 15 minutes after her friends left the room, defendant came into the room. He walked through the door, looked outside the room to make sure there was nobody else around, and then closed the door behind him. Defendant came towards her and pulled her to the end of the bed. He unbuckled his pants and started kissing her. Defendant pulled his pants down just far enough to pull his penis out. He pulled down her tank top and bra and kissed and sucked on her breasts. Next, defendant put his penis in her vagina for five or 10 minutes while her feet were on his shoulders where he placed them. He pulled his penis out, said he had to go, pulled up his pants, and left. Doe testified she did not do anything to stop defendant because she was unable to speak and too drunk to move.

2

Doe's friend H.L. had helped Doe into the spare bedroom, and H.L. returned many times to check on Doe. According to H.L., the first time was about 15 minutes later, and Doe was sleeping. The second time, Doe was still sleeping. The third time, H.L. saw defendant in the hallway. H.L. asked defendant if Doe was still in the spare bedroom, but defendant went downstairs without responding. H.L. thought that was odd. H.L. checked on Doe and found her sleeping. The fourth time, Doe was awake and asked for her boyfriend. The fifth time, Doe's mother called Doe's cell phone but Doe was sleeping. At that point H.L. stayed in the room with Doe and they eventually texted Doe's sister to pick Doe up.

H.L. and other friends brought Doe to the front yard. Doe laid down on the grass for about five minutes. Then Doe said defendant raped her. She kept repeating it over and over.

The niece told her family what Doe had said and they had a family meeting. Family members urged defendant to get a DNA test to disprove the accusation. Defendant denied the accusation and refused to get a test. Defendant's wife told him he needed to leave the house and he did.

On June 10, 2019, a Yuba County sheriff deputy responded to Doe's home. Doe went to the hospital and had a Sexual Assault Response Team (SART) examination. Defendant's DNA was found on Doe's cervix.

The next day, the deputy took a missing person report from defendant's wife, who reported defendant had disappeared. Defendant was arrested at the Sacramento International Airport on June 28, 2019, about three weeks after the graduation party, returning from Mexico with two letters he wrote to his wife, one in English and one in Spanish. The letter in English was admitted into evidence. It expressed defendant's remorse for his actions but did not identify the actions. A Yuba County detective described for the jury the letter in Spanish. The deputy described the letter as apologetic.

3

Defendant testified that Doe had smiled at him and looked at him in a "flirty" way. He said that at some point he heard a noise in the upstairs guest bathroom. He saw Doe by the sink. Defendant asked if she was okay, and Doe asked where she could go to make a private phone call. Defendant directed her to the spare bedroom. According to defendant, Doe asked him to go with her, and when they entered the room, Doe put her arms on his shoulder and they started kissing. Doe motioned for him to join her on the bed. Defendant said they had consensual intercourse. He did not think Doe was intoxicated.

Defendant testified that he told his wife he did not rape the "girl" but he had sex with her. He testified the letters he wrote to his wife were apologies for his infidelity.

The jury convicted defendant of rape of an intoxicated person and sexual intercourse with a minor. (Pen. Code, §§ 261, subd. (a)(3), 261.5, subd. (c).)[1] The trial court sentenced defendant to six years in state prison on the rape conviction. On the conviction for sexual intercourse with a minor, the trial court imposed a sentence of two years, but stayed the sentence under section 654.

We will provide additional background in the discussion as relevant to the contentions on appeal.

## DISCUSSION

### I

Defendant contends the trial court should have suppressed his apology letters.

### A

Pursuant to section 1538.5, defendant brought a motion to suppress letters found in his backpack during a border search when he returned from Mexico after the crime. The prosecution argued the search of the backpack and seizure of the letters was a lawful, routine, border search.

---

[1] Undesignated statutory references are to the Penal Code.

Defendant arrived at the Sacramento airport from Guadalajara, Mexico on June 28, 2019. The Customs and Border Patrol Officers knew there was a warrant for defendant's arrest, detained him, and turned him over to local law enforcement. A Customs and Border Patrol Officer searched defendant's backpack.

The border patrol officer who inspected the backpack at the Sacramento International Airport testified at the motion to suppress hearing. In the officer's official capacity at the airport, the officer conducts baggage examinations for international flights. The border patrol protocol for examining baggage varies from completely random searches, to searches based on referrals from officers, to searches of baggage of persons with a criminal history or warrants. In this case, the officer knew defendant had a warrant.

The officer testified it is normal practice to skim through documents they discover during searches to determine if there is anything worth examining further, including documentation of illegal behavior. In the instant search, when the officer took everything out of defendant's backpack, including a notebook, letters fell out of the notebook. When the officer reviewed the letters, the officer first noticed the address and phone number for the Yuba jail. A letter appeared to be an apology letter or letter of regret for his behavior. The letter said how sorry defendant was and how only God could help him. This stood out to the officer because the warrant for defendant was for sexual contact with a minor. The officer shared a letter written in Spanish with a colleague, who read it to see if there was any illegality described.

The trial court denied the motion to suppress, concluding the search of defendant's backpack was a lawful border search and no reasonable suspicion was required.

B

Defendant concedes the initial search was authorized as a routine border search. But he argues it was no longer a routine border search once the officer read one of the

letters, had another letter translated by a colleague, and submitted the letters to his supervisor for transmission to law enforcement.

When, as here, we review a ruling on a defense motion to suppress evidence, we defer to the trial court's factual findings if supported by substantial evidence, and independently apply the requisite legal standard to the facts presented to determine as a matter of law whether there has been an unreasonable search or seizure. (*People v. Celis* (2004) 33 Cal.4th 667, 679 (*Celis*).)

The Fourth Amendment to the United States Constitution protects citizens from unwarranted governmental intrusion. It provides the people are entitled "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (U.S. Const., 4th Amend.) "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (*Mincey v. Arizona* (1978) 437 U.S. 385, 393-394 [152 L.Ed.2d 290].)

There are a few exceptions to the presumption of unreasonableness. (*Celis, supra*, 33 Cal.4th at pp. 676-677.) One exception is a search at our nation's borders. For someone arriving on an international flight, the functional equivalent of a border is the first stop in the United States. Routine searches of persons and effects in that context are not subject to any requirement of reasonable suspicion, probable cause or warrant. (*People v. Laborde* (2008) 163 Cal.App.4th 870, 874 (*Laborde*) [citing *United States v. Montoya de Hernandez* (1985) 473 U.S. 531, 538 [87 L.Ed.2d 381]]; *United States v. Moore* (9th Cir. 1980) 638 F.2d 1171, 1173.) But nonroutine border searches are another matter. Courts have held that they are justified based on reasonable suspicion of criminal activity. (*Laborde,* at pp 874-875.)

Although the customs officer knew that defendant had a warrant, the search of his backpack was consistent with a routine and legal border search, and the backpack

contained documents related to the crimes defendant committed. Nothing the border patrol did in reviewing the contents of the backpack or forwarding the letters to law enforcement converted the routine border search into a nonroutine search that might have required more particularized suspicion. The search here was less intrusive than the search in *United States v. Arnold* (2008) 533 F.3d 1003, 1008-1009. In that case, where border patrol agents reviewed the contents of an international passenger's laptop, the Ninth Circuit ruled no reasonable suspicion was necessary.

Defendant cites *United States v. Levy* (2nd Cir. 2015) 803 F.3d 120, 123, but that case did not decide whether review of a traveler's notebook required reasonable suspicion because there the officer *had* reasonable suspicion. Defendant also cites *United States v. Kolsuz* (4th Cir. 2018) 890 F.3d 133, 144, but that case is inapposite because it involved a forensic search of a cellular phone.

C

Defendant further argues the letters should have been suppressed because they were confidential marital communications protected by the marital privilege. But he forfeited that claim by not raising it in the trial court. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) Anticipating this result, defendant claims his counsel was ineffective for failing to raise the marital privilege. A claim of ineffective assistance of counsel requires defendant to show by a preponderance of the evidence (1) counsel's performance fell below the objective standard of prevailing professional norms, and (2) defendant was prejudiced by counsel's failing. (*Strickland v. Washington* (1984) 466 U.S. 668, 688-695 [80 L.Ed.2d 675].)

Evidence Code section 980 provides: "Subject to Section 912 and except as otherwise provided in this article, a spouse (or his or her guardian or conservator when he or she has a guardian or conservator), whether or not a party, has a privilege during the marital or domestic partnership relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he or she claims the privilege and

7

the communication was made in confidence between him or her and the other spouse while they were spouses."

When a defendant sends a letter through the United States mail subject to inspection at our border, the California Supreme Court has concluded the letter does not fall within the confidential marital communications privilege because the communications are not made in confidence. (*People v. Mickey* (1991) 54 Cal.3d 612, 654 (*Mickey*).) To make a disclosure in confidence, the communicator must intend the communications will not be disclosed and have a reasonable expectation of privacy in the communication. (*Ibid.*; *People v. Von Villas* (1992) 11 Cal.App.4th 175, 221.)

The contents of a stateroom on a cruise ship are lawfully subject to search by border patrol agents without any articulable suspicion upon arrival at the first port of call in the United States. (*Laborde, supra*, 163 Cal.App.4th at p. 877.) International letters sent in the mail are subject to search at the border. (*Mickey, supra*, 54 Cal.3d at p. 654.) The gas tank of a car can be removed, dismantled, searched, and reassembled by border patrol agents, without reasonable suspicion at the border. (*United States v. Flores-Montano* (2004) 541 U.S. 149, 155 [158 L.Ed.2d 311].) The import of these cases is that a person does not have a reasonable expectation of privacy in items they bring to the border for entry into this country. (*Id.* at pp. 152-154.)

In this case, when defendant reentered the United States by airplane from Mexico with his letters in his backpack, the backpack and all its contents were subject to legal search by the border patrol upon his arrival in the United States without any reasonable suspicion or other cause. Under such circumstances, defendant has not established ineffective assistance of counsel.

## II

Defendant next contends there is insufficient evidence to support his convictions. In addressing such a challenge, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine

8

whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210 (*Nelson*).) We do not reweigh evidence. (*Ibid.*) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.) The effect of this standard of review is that a defendant challenging the sufficiency of the evidence to support his or her conviction bears a heavy burden on appeal. (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1287.)

We will address each conviction in turn.

A

Defendant challenges the sufficiency of the evidence to support his conviction for rape of an intoxicated person. He argues "the vague timing of the sexual intercourse together with [Doe's] clear recall of the incident do not support a finding beyond a reasonable doubt [defendant] reasonably knew she was unable to give legal consent."

Section 261, subdivision (a)(3), provides: "(a) Rape is an act of sexual intercourse accomplished under any of the following circumstances: [¶] . . . [¶] (3) If a person is prevented from resisting by an intoxicating or anesthetic substance, or a controlled substance, and this condition was known, or reasonably should have been known by the accused."

9

The trial court instructed the jury, among other things, that on the charge of rape of an intoxicated person, the prosecution was required to prove that the effect of an intoxicating substance prevented resistance and defendant knew or reasonably should have known this. (CALCRIM No. 1002.) The trial court instructed: "A person is prevented from resisting if he or she is so intoxicated that he or she cannot give legal consent. In order to give legal consent, a person must be able to exercise reasonable judgment. In other words, a person must be able to understand and weigh the physical nature of the act, its moral character, and probable consequences. [¶] Legal consent is consent given freely and voluntarily by someone who knows the nature of the act involved. It does not require that she physically resist or fight back in order to communicate her lack of consent. [¶] . . . [D]efendant is not guilty of this crime if he actually and reasonably believed that [Doe] was capable of consenting to sexual intercourse, even if that belief was wrong. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that [Doe] was capable of consenting. If the People have not met this burden, you must find . . . defendant not guilty." (CALCRIM No. 1002.)

Defendant argues the evidence does not demonstrate he raped Doe while she was intoxicated, but rather that they had intercourse prior to the time she became intoxicated. He points to his testimony that he had sex with Doe at 7:00 p.m., whereas his niece testified that Doe appeared intoxicated at 8:00 p.m. or 9:00 p.m. He also points to Doe's testimony that she recalled in detail how he raped her.

Again, however, the judgment may not be reversed simply because the circumstances might lead to a contrary finding. (*Nelson, supra*, 51 Cal.4th at p. 210.) We do not reweigh the evidence. (*Ibid.*) There is substantial evidence that Doe consumed a significant amount of alcohol and became so intoxicated that her speech became slurred, she lost her balance, she vomited, and she urinated on herself and the floor. The friends had to help her into the spare bedroom. There is also substantial

10

evidence that defendant walked into the spare bedroom shortly thereafter and inserted his penis into her vagina while she was unable to say or do anything to stop him. The jury heard and rejected defendant's testimony that he did not believe she was intoxicated at the time he had sex with her. The fact that Doe's friends regularly checked on her does not make the rape impossible or improbable.

B

Defendant also challenges his conviction for unlawful sexual intercourse with a minor. He argues there is insufficient evidence he did not believe Doe was at least 18 years old.

Section 261.5, subdivision (c) provides: "Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony."

Among other things, the trial court instructed the jury that to be convicted of this crime, the People had to prove that at the time of the intercourse Doe was under the age of 18 and more than three years younger than defendant, and defendant did not reasonably and actually believe Doe was at least 18 years old. (CALCRIM No. 1071.)

At the jury instruction conference, defense counsel admitted defendant did not testify to his belief Doe was over 18, but counsel believed the instruction on the defense should be given because there was testimony of the victim's age and relative ages of the other persons present at the party. In closing argument, he argued there was no evidence defendant did not reasonably believe Doe was at least 18.

The People argue defendant met Doe at his son's graduation ceremony, which would provide the inference defendant knew she was not a graduate and thus must have known she was a high school junior. The only evidence on that topic, however, was that someone pointed defendant out to Doe at the ceremony but they did not meet at that time. The People also point to the evidence that Doe was a junior, not a graduating senior, arguing the jury could conclude it was not reasonable to believe a junior in high school

11

was over 18. However, we have found no evidence in the record indicating that defendant knew Doe was a junior.

The People further point to the fact defendant never testified he believed Doe was at least 18 years old. But it was not defendant's burden to prove a reasonable belief that Doe was at least 18; it was the People's burden to prove beyond a reasonable doubt that defendant lacked such a reasonable belief. (*People v. Winters* (1966) 242 Cal.App.2d 711, 716.) Defendant's silence did not establish this element.

CALCRIM No. 361 provides that when a criminal defendant testifies, it is permissible for a jury to draw a negative inference from a defendant's failure to explain or deny a fact if the defendant could reasonably be expected to do so. But neither of the parties requested that the jury be instructed with CALCRIM No. 361 and the trial court did not instruct the jury with it. Under one line of cases, the trial court must find the defendant was expressly asked a question calling for an explanation or denial before the instruction may be given. (*People v. Roehler* (1985) 167 Cal.App.3d 353, 392.) Under another line of cases, the instruction may be given when the issue requiring explanation or denial was within the scope of relevant cross-examination. (*People v. Grandberry* (2019) 35 Cal.App.5th 599, 609.) Here, under either line of cases, the inference was not available. Defendant was never asked whether he believed Doe was at least 18, and his belief in her age was not within the scope of cross-examination when he claimed Doe initiated a consensual encounter with him. The jury could not have drawn the adverse inference suggested by the People based on defendant's testimony.

The People assert defendant knew that his son was 18 and his niece was 17. Certainly, a reasonable inference could be made from the evidence that defendant knew or should have known that *some* of the guests at the party were not yet 18. We conclude that without more, such an inference does not establish the necessary element beyond a reasonable doubt with regard to Doe.

12

Because there is insufficient evidence to support all of the necessary elements, we will reverse the conviction for unlawful sexual intercourse with a minor.

In supplemental briefing, the parties both agree this case should be remanded pursuant to Assembly Bill No. 518 (2020-2021 Reg. Sess.), which amended section 654. That amendment gives the trial court discretion to choose which conviction to stay when the conduct arises out of a single act or omission punishable in different ways by different provisions of law. However, because we reverse defendant's conviction for unlawful sexual intercourse with a minor, there is only one conviction remaining and section 654 has no application.

## DISPOSITION

Defendant's conviction for sexual intercourse with a minor is reversed. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation

/S/
MAURO, J.

We concur:


/S/
HULL, Acting P. J.


/S/
BOULWARE EURIE, J.

13