UNITED STATES of America,
Plaintiff-Appellee,

v.

Philip R. MASTERS,
Defendant-Appellant.

No. 79–1068.

United States Court of Appeals,
Ninth Circuit.

Dec. 17, 1979.

Rehearing Denied Feb. 22, 1980.

Mark E. Beck, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Michale P. Balaban, Balaban & Stern, Los Angeles, Cal., for defendant-appellant.

Before CHAMBERS and ANDERSON, Circuit Judges, and PALMIERI,* District Judge.

PALMIERI, District Judge:

On August 31, 1977, appellant, Philip R. Masters, and his travelling companion, Kathleen D. Shorkey, arrived at Los Angeles International Airport on a flight from Tokyo, Japan. They were arrested when secondary Customs examinations revealed that they were concealing certain items that should have been disclosed to the United States Customs Inspectors. Masters had concealed 6,060,000 Japanese yen, valued at the time at approximately $22,670, underneath his clothing. Shorkey had concealed a diamond and emerald ring beneath her blouse and seven unset diamonds and a diamond ring beneath a thick panty girdle that she had bought in Tokyo at the direction of Masters and the use of which was directed by him during the transpacific flight immediately prior to entry into the United States.

On October 19, 1978, an indictment was returned charging Masters and Shorkey with having concealed gems from United States Customs and charging Masters, alone, with having concealed 6,060,000 Japanese yen, in violation of 18 U.S.C. § 1001.[1] Shorkey testified as a Government witness after securing a dismissal of the charges against her.

The jury returned a verdict finding Masters guilty as charged on both counts of the indictment. Considering the evidence in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 2 S.Ct. 457, 86 L.Ed. 680 (1942), we conclude that the judgment of conviction should be affirmed.

## CONCEALMENT OF THE GEMS—COUNT I

In July, 1977, Masters asked Shorkey to accompany him to Tokyo on a pleasure trip.

---

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. 18 U.S.C. § 1001: Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The two flew from Los Angeles to New York, where Masters spent a week meeting with a New York jeweler[2] about the trip to the Orient. According to Shorkey's testimony at trial, before leaving New York for Tokyo, Masters gave her a diamond bracelet and two rings. Masters instructed her to place the bracelet on her wrist under her sleeve and the two rings on chains inside her blouse before boarding the plane. After they cleared Customs in Tokyo, Shorkey removed the jewelry and returned it to Masters.

Shorkey further testified that once they were in Tokyo, she shopped while Masters sold diamonds and played cards. Masters then directed Shorkey to return to New York to pick up another package of diamonds from the jeweler.

Several days after Shorkey returned to Tokyo from New York, Masters told her that he was in a hurry to return to Los Angeles and wanted to leave immediately. He asked her to assist him on the trip by concealing some gems beneath her clothing while they attempted to clear Customs in Los Angeles. Masters explained that he was afraid that Customs would seize the gems in satisfaction of the debt he owed the Internal Revenue Service.[3]

Using Masters' money and at his request, Shorkey purchased a panty girdle in Tokyo. En route to Los Angeles, Masters gave Shorkey a package and a ring and told her to go to the bathroom of the plane and to place the package in her girdle and the ring around her neck. Upon her return, Masters said, "that's fine."

Masters and Shorkey proceeded to the primary Customs inspection table together. The primary Customs inspector determined that a secondary examination of Masters should be ordered.[4] During the secondary examination, the yen was found, concealed under Masters' clothing. Upon discovery of the yen, a secondary examination of Shorkey was conducted, revealing the gems.

■ Masters argues that in order for the conviction under Count I to comport with due process, the Government must show that Masters had either explicit or constructive notice that his possession of the gems, which were acquired in the United States, was material to Customs. He contends that the Customs declaration form[5] not only fails to give notice of the need to declare such gems, but affirmatively represents that only items acquired abroad are material to Customs.

This is a specious argument, as the Customs form clearly states: "All your baggage (*including handbags and hand-carried parcels*) may be examined." (emphasis in original) While Customs has a great interest in items acquired abroad, to determine whether they are dutiable, Customs is charged with the responsibility of inspecting and evaluating all merchandise upon its arrival into the United States from abroad.[6]

---

2. The jeweler, Anthony Marinelli, claimed that he was the owner of the gems and that he gave them to Masters on consignment to be sold in the Orient. Upon the trial, this was substantially conceded by the Government.

3. Evidence at trial established that IRS liens amounting to more than $400,000 were on file against Masters in Los Angeles County as of the date of the offense.

4. The following factors constituted the basis for ordering the secondary examination: Shorkey and Masters' nervous behavior during the primary examination; lack of receipts for newly purchased luggage; driver's licenses with Masters' picture bearing two different names; the appearance of a "30-day lookout" for Masters in the computer because he was suspected of smuggling diamonds from Hong Kong; receipts for diamonds were found in their lug-

gage; and when the inspector asked Shorkey her occupation, she hesitated and Masters stated "tell them anything, they'll believe it."

5. Customs Form 6059–B.

6. There are extensive regulations providing the Customs authorities with broad powers to examine baggage and inspect goods crossing the national boundaries. These regulations are authorized under the provisions of the U.S.Code Title 19, Customs Duties. For instance, 19 C.F.R. § 148.11 (1979) provides: All articles brought into the United States by any individual shall be declared to a Customs officer at the port of first arrival in the United States, on a conveyance en route to the United States on which a Customs officer is assigned for that purpose, or at a pre-clearance office in a foreign country where a United States Customs

The national interest in such inspection is clear. In *Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973), the Supreme Court, in the course of a discussion of the power of the Federal Government to exclude aliens from the country, stated:

> It is . . . without doubt that this power can be effectuated by routine inspections and searches of individuals or conveyances seeking to cross our borders. As the Court stated in *Carroll v. United States* [267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543]: "Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in and his belongings as effects which may be lawfully brought in." 267 U.S. at 154 [45 S.Ct. at 285].

The regulations governing the declaration and entry of all items brought into the United States set forth a broad declaration requirement that assists Customs in fulfilling its responsibility.[7] In a discussion of the constitutionality of a border search, this court stated: "Realization of customs officials' special problems has resulted in courts giving the broadest interpretation compatible with our constitutional principles in construing the statutory power of customs officials." *United States v. Stanley*, 545 F.2d 661, 666 (9th Cir. 1976), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978).

 In *Ogden v. United States*, 303 F.2d 724, 742–43 (9th Cir. 1962), this court considered a false denial to the Air Force of Communist Party membership and construed Section § 1001 as follows:

> 18 U.S.C.A. § 1001 was intended to serve the vital public purpose of protecting governmental functions from frustration and distortion through deceptive practices, and it must not be construed as if its object were narrow and technical. It is immaterial that the filing of the Certificate of Non-affiliation may not have

been required by Air Force regulations in the particular circumstances, that the need for clearance may not have been immediate, or that the Department did not in fact rely upon the defendant's false statement to its injury. A false statement is submitted in a matter within the jurisdiction of a department or agency within the meaning of 18 U.S.C.A. § 1001 if it relates to a matter as to which the Department had the power to act. (footnotes omitted)

The transportation of gems into the United States is obviously a matter within the jurisdiction of Customs.

In *United States v. Rose*, 570 F.2d 1358 (9th Cir. 1978), a traveller failed to declare a dutiable item contained in the false bottom of a suitcase and gave false responses to a routine series of questions by the border agent. Affirming the conviction under 18 U.S.C. § 1001 based on these false responses, this court noted that

> [a]lthough the statement in this case was oral, unsworn and unrelated to any monetary claim against the United States, the declarant was claiming the privilege of entry, and his statement potentially impaired the function of the Customs Service.

. . . . .

> Although in this factual situation contraband was not allowed into the United States by [declarant's] statement, the statement had the "intrinsic" capability of bringing it about. 570 F.2d at 1364.

*See also United States v. Leviton*, 193 F.2d 848, 851 (2d Cir. 1951), *cert. denied*, 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350 (1952), where the court held that § 1001 should be broadly construed to apply to "false statements as might impede the 'exercise of federal authority.'" *See generally United States v. Parten*, 462 F.2d 430, 432 (5th Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972), where the court upheld convictions under § 1001 of two travel-

---

officer is stationed for that purpose. *See also* 19 C.F.R. §§ 148.12–148.19.

7. *Id.*

lers re-entering the United States who had provided fictitious names. The court stated that Customs' declaration form was more than a "mere convenience."

■ Masters is correct in stating that the Customs form does not explicitly require that every item in a traveller's possession be declared. Nevertheless, the absence of such a requirement does not condone active concealment of a traveller's belongings. The traveller cannot be permitted to frustrate Customs' right to inspect all baggage and all merchandise brought into the United States.

■■ On the evidence before it, the jury could reasonably infer that Masters' course of conduct, as described above, evidenced an awareness of the notice he denies receiving—that Customs would consider material the passage of valuable gems into the United States.[8] His reliance on the notice requirement discussed by the Supreme Court in the context of a felon registration statute in *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) is therefore inapposite. *See generally United States v. Zavala*, 139 F.2d 830, 832 (2d Cir. 1944), where the court noted in a case involving prosecution under 18 U.S.C. § 80, now § 1001, that evidence that the traveller's trunk had a false bottom would have been competent, had defendant objected, as bearing on his general intent to deceive the government.

### CONCEALMENT OF THE YEN—COUNT II

According to two special agents of Customs, Masters stated to them that he was given the yen (allegedly gambling winnings) by a Japanese businessman at Tokyo airport. Shorkey testified that as she and Masters boarded the airplane, he asked her whether his jacket looked "full."

During the primary inspection, the Customs inspector asked Masters whether he was in fact "carrying in excess of $5,000 in currency, travellers' checks or any other negotiable instruments," as he had indicated on his baggage declaration. Masters replied that he was, telling the inspector that he was carrying $9,000 in United States currency and offering to count it at the primary inspection table. The inspector also asked Masters whether he was carrying any other money[9] and whether he was carrying anything on his person other than the items he had declared. To both questions, Masters replied in the negative, indicating that the only currency he had with him was the $9,000 in United States currency. In fact, Masters had with him an additional $1,300 in United States currency, as well as the 6,060,000 Japanese yen.

The inspector gave Masters a Report of International Transportation of Currency or Monetary Instruments (Form 4790) so that he could report the $9,000. When the inspector saw that Masters was prepared to count a large sum of money in public, he told him to count the money and complete the Form 4790 away from public view in a private room that would be made available to him.

Once in the secondary inspection room, the inspector conducted a routine patdown of Masters and discovered the yen. At that time, Masters admitted that he had tried to smuggle the money into the United States. According to the testimony of several Cus-

---

**8.** At oral argument, counsel for Masters contended that the term "material" in 18 U.S.C. § 1001 must be defined in terms of other statutes. In other words, he argued that a statement or an act is material only if it violates another statute, such as a statute requiring that currency be reported or that duty be paid. This theory is without merit and none of the cases cited by Masters in his brief or at oral argument provides support for this argument.

**9.** At oral argument, counsel for Masters stated that the Customs inspector, on cross-examination, had admitted that his question regarding additional "money" had actually been phrased in terms of additional "U. S. currency." The transcript of the trial, however, shows that on cross-examination, the inspector refused to change his original story and repeatedly testified that he had questioned Masters as to additional "money."

**1122**

toms officials, Masters stated several reasons for concealing the yen: he thought there were Japanese restrictions on the exportation of currency, or United States restrictions on the importation of currency, and he was concerned about the outstanding IRS lien.

Masters was asked an unambiguous question: whether, in addition to the $9,000 he had declared, he was carrying any other money. When he answered in the negative, he lied to a government official. "A citizen may decline to answer the [government's] question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood." *Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969) (prosecution under § 1001 for false statements made to the NLRB).

■ Masters argues that the Government, by failing to allow him to complete the form, prevented him from complying with Customs currency reporting requirements and that, by analogy to contract law, the Government should not benefit from its conduct and should not be permitted to prosecute him. The argument is without merit, as Masters was not prosecuted for failing to report currency, but rather, for concealing a material fact. We have been unable to discover any authority or indeed any basis on which it could be argued that the Government is barred from prosecuting under § 1001 solely because in its first contacts with an arriving traveller at Customs it purports to deal with him under the reporting statute, 31 U.S.C. § 1101.

During questioning following Masters' secondary examination, Masters stated that he had no intention of declaring the yen on Form 4790 because he believed it was a more serious violation of the law to file a

false form than not to file a form at all. Masters argues that this admission cannot form the basis of a conviction for concealment as it is a "bald supposition of what might have happened." Once again, Masters misconceives the nature of the prosecution. His admission does not prove a failure to report currency; it evidences his intent to deceive the Government by concealing a material fact, thereby impeding the exercise of federal authority. *United States v. Leviton, supra.*[10]

## CONCLUSION

■ We conclude that there is no merit in Masters' arguments that conviction on Count I is precluded by lack of notice and on Count II by the Government's hindrance of his compliance with the law. We further conclude that the trial court did not err in denying Masters' motion for mistrial, which was made just after testimony regarding Masters' expression of his intention to remain silent during Customs questioning. The testimony was essential "to lay a proper foundation for the admission of any statements given thereafter" by Masters. *United States v. Wycoff,* 545 F.2d 679, 681 (9th Cir. 1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977).

The judgment of conviction is affirmed.

---

**10.** Our recent decision in *United States v. Shui-Yee Shirley Chen,* 605 F.2d 433 (9th Cir. 1979) arises under § 1101 and presents a very different factual situation. The defendant's alleged wilful failure to file the report required under § 1101 was deemed insufficient as a matter of law and the conviction was reversed. The defendant there had completed the reporting form in a secondary Customs inspection area when an agent ordered the form destroyed and the money confiscated.