688 F.2d 682
 Rupert Ray DIXON, Petitioner-Appellant,
v.
Clarence W. DUPNIK, Sheriff of Pima County, State of
Arizona, and the State of Arizona, Respondents-Appellees.
Thomas Edward WARD, Petitioner-Appellant,
v.
Clarence W. DUPNIK, Sheriff of Pima County, State of
Arizona, and the State of Arizona, Respondents-Appellees.
 Nos. 81-5182, 81-5183.
 United States Court of Appeals,
Ninth Circuit.
 Argued Sept. 16, 1981.
Submitted Dec. 1, 1981.
Decided Sept. 23, 1982.
 
 Jeffrey D. Bartolino, Tucson, Ariz., for petitioner-appellant.
 Kevin Miniat and Joseph L. Brownlee, Deputy County Attys., Phoenix, Ariz., for respondents-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before GOODWIN and REINHARDT, Circuit Judges, and VAN PELT,* District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 Dixon and Ward appeal the orders of the district court denying their petitions for writs of habeas corpus under 28 U.S.C. § 2254 (1976). Dixon was indicted by the State of Arizona in 1980 under the then existing section 13-3970 of the Arizona Revised Statutes for committing a felony while released on his own recognizance. The state trial has been stayed pending resolution of his appeal.[1] We reverse.[2]
 
 
 2
 Dixon was initially convicted of the crime of unlawful sale of heroin in violation of section 36-1002.02 of the Arizona Revised Statutes, and was sentenced to a 15 year term of imprisonment. At the time he committed that offense he had been released on his own recognizance, after having been charged with an earlier crime. Following his sentencing on the heroin charge, he was again indicted, this time under section 13-3970. The statute, which was subsequently repealed,[3] provided as follows:
 
 
 3
 A person who is convicted of committing any felony offense, whether federal or state, which felony offense is committed while such person is released on bail or his own recognizance on a separate felony charge, is guilty of the offense of committing a class 5 felony while released on bail or his own recognizance. The sentence imposed shall be in addition to and shall be served consecutively to any penalty imposed for the offense committed while released on bail or on his own recognizance.
 
 
 4
 Ariz. Rev. Stat. Ann. § 13-3970 (1978). He is now awaiting trial on that indictment.
 
 
 5
 Dixon argues that section 13-3970 violates the prohibition against double jeopardy because it creates a separate and distinct prosecution and penalty for the same underlying offense that resulted in his previous conviction. The State of Arizona contends that section 13-3970 sets forth a separate offense.
 
 
 6
 The State relies, in part, on the Supreme Court's statement in Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), that "(f)ew, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses." Id. at 69, 98 S.Ct. at 2180, citing Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Brown explains the Sanabria language:
 
 
 7
 (T)he Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial (footnote omitted).
 
 
 8
 432 U.S. at 165, 97 S.Ct. at 2225. Thus, the legislature is free, if it wishes, to define the same offense in multiple statutes. Courts and prosecutors, however, may not bring those statutes to bear against a defendant in a manner that violates the double jeopardy clause.
 
 
 9
 The State next argues that Miller v. Superior Court, 114 Ariz. 130, 559 P.2d 686 (Ct. App. 1977), and State v. Cassius, 110 Ariz. 485, 520 P.2d 1109 (1974) (en banc), are dispositive of the question whether section 13-3970 and the underlying felony constitute the same offense for double jeopardy purposes. In Miller, the court of appeals ruled that no crime has been committed under section 13-3970 until a conviction has been secured for the underlying felony offense. 114 Ariz. at 131, 559 P.2d at 687. Thus, under Miller, a conviction for the underlying felony is an element of a section 13-3970 offense. In Cassius, which preceded Miller, the Supreme Court of Arizona concluded that the underlying felony and the section 13-3970 offense had no elements in common. 110 Ariz. at 487, 520 P.2d at 1111.
 
 
 10
 The State cites Brown for the proposition that state courts have the final authority to interpret state statutes. We do not dispute the authority of the Arizona courts to determine the elements of a state offense. We believe, however, that the authority of the state courts falls short of foreclosing review by the federal courts of the application of the federal double jeopardy bar to state statutes as construed by the state courts. Although state courts retain ultimate authority to interpret the elements of state statutes for purposes of prosecution, their definition of the elements does not necessarily answer the ultimate question whether there is a violation of the double jeopardy clause. We do not read Brown to the contrary. In fact, in Brown, the Court, after setting forth the state court's view of the "offenses" involved, went on to make its own independent analysis of those offenses for purposes of the double jeopardy clause. Id. at 168, 97 S.Ct. at 2226.
 
 
 11
 The standard to be used in determining whether two statutes describe the same offense-the standard applied by the Court in Brown -was announced in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):
 
 
 12
 The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not .... "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."
 
 
 13
 Id. at 304, 52 S.Ct. at 182. Blockburger was charged inter alia with a single sale of narcotics which violated two statutory provisions, one proscribing a sale not made from the original stamped package, the second prohibiting a sale not made pursuant to a written order of the purchaser. Applying the test, the Court concluded that the single sale constituted two distinct offenses, because each statutory violation required proof of a fact, attendant to the sale, which the other did not.
 
 
 14
 The State's efforts to overcome Blockburger are based, in large part, on the Arizona Supreme Court's conclusion in Cassius that the underlying felony and the section 13-3970 offense have no elements in common. The State asserts that it is the fact of conviction, not the elements of the underlying offense, which, together with proof of the defendant's release status at the time the underlying offense was committed, comprise the elements of the section 13-3970 offense. Accordingly, the State argues, the facts which must be proved for the underlying felony are wholly distinct from the facts which must be proved for the section 13-3970 offense, and the Blockburger test is satisfied.[4] Dixon contends that the fact of conviction subsumes all the elements of the underlying felony, and that the underlying felony, therefore, requires proof of no fact distinct from those required for proof of the section 13-3970 offense.
 
 
 15
 While proof of a violation of section 13-3970 does not require introduction of independent evidence of the facts necessary to obtain a conviction of the underlying offense, the reason is that proof of the conviction serves to accomplish that purpose. In our view, the essential element that the State must show (in addition to the release status) is that a defendant has committed the underlying offense; otherwise there would be no act for which the defendant could lawfully be punished.
 
 
 16
 Were we to construe section 13-3970 as making unlawful, or imposing punishment for, only the fact of having been convicted while on release status, and not for the commission of the underlying offense as well, we would be compelled to hold that provision unconstitutional. The conviction is not in itself a wrongful "act" that can serve as the basis for the imposition of punishment. See Powell v. Texas, 392 U.S. 514, 533, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1968); Robinson v. California, 370 U.S. 660, 667, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962).[5] Moreover, a conviction represents an act of the State, not an act of the defendant. A conviction is something done to a defendant, not by him. Therefore, a defendant may not be punished simply for the undisputed fact of having been convicted.
 
 
 17
 The state courts may properly determine that section 13-3970 requires proof of conviction of the underlying offense rather than just independent evidence of the facts necessary to prove the underlying offense. However, if section 13-3970 is to withstand preliminary constitutional scrutiny, aside from the double jeopardy clause, the meaning of the element of conviction must include both the fact of conviction and the elements of the underlying offense. We think it most probable that such was the meaning intended by the Arizona legislature.[6]
 
 
 18
 When section 13-3970 is viewed in this light, the wisdom shown by the Arizona legislature in repealing the statute becomes apparent, for application of the Blockburger test readily leads to the conclusion that the section violates the double jeopardy clause. The element of conviction required for proof of section 13-3970 subsumes the elements of the underlying felony. Thus, there is no fact required for proof of the underlying felony that is not also implicitly required for proof of the section 13-3970 offense. The fundamental problem with the now defunct Arizona statute was that it sought to subject a defendant to two separate trials and two separate punishments for committing one offense. That is precisely the type of governmental action that the double jeopardy clause is designed to prevent. See Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Accordingly, we hold that the section 13-3970 prosecution of Dixon does not meet the test set forth in Blockburger.
 
 
 19
 The State next argues that, even if the underlying felony and the section 13-3970 offenses are the same, the exception to the double jeopardy prohibition announced in Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), applies. We do not agree.
 
 
 20
 Diaz initially pleaded guilty to a charge of assault and battery. Thereafter, his victim died as a result of the injuries Diaz had inflicted. Diaz was then charged with homicide and convicted despite his plea of double jeopardy. The Supreme Court affirmed the judgment of conviction:
 
 
 21
 The homicide ... and the assault and battery ..., although identical in some of their elements, were distinct offenses both in law and in fact. The death of the injured person was the principal element of the homicide, but was no part of the assault and battery. At the time of the trial for the latter the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense.... All that could be claimed for that jeopardy was that it protected the accused from being again prosecuted for the assault and battery, and therefore required that the latter be not treated as included, as a lesser offense, in the charge of homicide, .... It follows that the plea of former jeopardy disclosed no obstacle to the prosecution for homicide.
 
 
 22
 223 U.S. at 448-49, 32 S.Ct. at 251.
 
 
 23
 The State argues that this case falls under Diaz because the conviction, a necessary element of a section 13-3970 offense, had not occurred at the time Dixon was charged with the underlying offense. The State concedes that no case law exists which treats a subsequent conviction as falling within the Diaz exception, but invites us to extend Diaz to this case. We decline to do so.
 
 
 24
 Diaz stands for the proposition that an individual may first be prosecuted for his act, and thereafter tried again for those additional direct unlawful or wrongful consequences of the act that occur subsequent to his initial conviction. The death of the victim, the initially missing element of the homicide in Diaz, constituted a direct and wrongful consequence caused solely by the defendant's act. Certainly, there was no independent supervening act of the State that created the missing element. Dixon's conviction was, in one sense, a consequence of his act in committing the underlying felony. However, his conviction constituted an independent event which was brought about by a subsequent act of the State. Moreover, the conviction was not a wrongful or unlawful consequence, but rather a proper and appropriate occurrence.[7] We conclude that the State may not independently create a new element and on the basis of that additional element try an individual twice for the same offense. Thus, we find the Diaz exception inapplicable.
 
 
 25
 We hold that the section 13-3970 prosecutions of Dixon and Ward are barred by the double jeopardy clause.
 
 
 26
 REVERSED with directions to issue the writ.
 
 
 
 *
 The Honorable Robert Van Pelt, Senior United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 Dixon initially brought a motion to dismiss the indictment on double jeopardy grounds in the Arizona Superior Court, Pima County. The motion was denied. He then filed a Petition for Special Action in the Arizona Court of Appeals. The petition was denied. He next filed a petition for review in the Arizona Supreme Court. That, too, was denied
 
 
 [2]
 Ward's appeal presents the identical legal issue. The material facts are for all practical purposes the same. Our discussion of Dixon's appeal is in all respects applicable to Ward's, as is our disposition
 
 
 [3]
 Ariz. Rev. Stat. Ann. § 13-3970 (1978) was repealed by the Arizona legislature in 1981 in a bill making the commission of a felony while on release status a part of the penalty enhancement scheme. Ariz. Rev. Stat. Ann. § 13-604(M) (1981)
 
 
 [4]
 Although Cassius' conclusory statement that the offenses had no common elements is based exclusively on the charges it reports were set forth in the indictment, the facts of the case make it extremely difficult to understand the court's statements, reasoning, or analysis. At one point the court says that Cassius was indicted in count one for burglary and in count two for "being convicted of a felony while free on his own recognizance." 110 Ariz. at 487, 520 P.2d at 1111 (emphasis added). The burglary charged in count one was the "felony" charged in count two. Obviously, Cassius had not been convicted on count one at the time he was accused in count two of having been convicted of that felony. Yet the court says (and we discuss this question later) that conviction of a felony while on one's own recognizance and commission of the underlying offense involve no common elements. On the other hand, in an earlier part of its opinion the court says Cassius was indicted on one count for burglary and on the second count for "committing a felony while free on his own recognizance." 110 Ariz. at 486, 520 P.2d at 1110 (emphasis added). We think this earlier statement accurately describes the facts that were before the court. Moreover, it seems to us that it reveals the true intent, purpose, and effect of the Arizona statute. It is the commission of the underlying offense, not the conviction, that constitutes the act for which punishment is imposed. We note that the court in Cassius did not state that commission of the underlying felony and commission of that felony while on bail did not involve common elements. In fact, no Arizona decision cited to us so holds. We would add that the fact that the conviction is a prerequisite to the bringing of an indictment, as the later decision in Miller recognized, does not change our analysis. Rather, it casts further doubt on the propriety of the Cassius indictment and the vitality of that decision. Miller did not, of course, consider any double jeopardy issue, since it held that the indictment must be dismissed
 
 
 [5]
 Though decided on different constitutional ground than we address here, Powell articulates a fundamental principle in the criminal law, that
 criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some actus reus.
 Powell, 392 U.S. at 533, 88 S.Ct. at 2154.
 
 
 [6]
 We have only to examine the potential application of section 13-3970 to conclude that it is the commission of the underlying offense and not the bare fact of conviction that is an essential element of the offense. Adoption of the State's view that it is solely the conviction would validate an endless chain of prosecutions under section 13-3970. An individual could first be convicted on the predicate felony. Then a separate felony could be charged under section 13-3970, as was done here. If the defendant were then again released on bail or his own recognizance and while in that status convicted of the violation of section 13-3970 that he had been previously charged with, he could once again be charged with an additional felony. The conviction under section 13-3970, itself a felony, could serve as a predicate for the second charge under that same section. Then, if the defendant were again released on bail or his own recognizance, each conviction under section 13-3970 would pave the way for a subsequent charge and conviction, ad infinitum. Each charge would require the defendant to stand a separate trial; each conviction would permit the imposition of an additional punishment
 
 
 [7]
 See supra note 5 and accompanying text