UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Noel WOODWARD,
Defendant-Appellant.

No. 81–1140.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1981.

Withdrawn from Submission
June 18, 1982.

Resubmitted July 9, 1982.

Decided Aug. 5, 1983.

As Modified on Denial of Rehearing and
Rehearing En Banc Feb. 29, 1984.

Andrea Sheridan Ordin, U.S. Atty., Carolyn Turchin, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Terry Amdur, Pasadena, Cal., for defendant-appellant.

Before KASHIWA,[*] Court of Claims Judge, FLETCHER, and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Woodward appeals from a conviction on two counts for failing to report approximately $22,000 in United States currency he was carrying as he entered the country. We affirm his conviction under 31 U.S.C. § 1058 (1976), the second count, but reverse his conviction under 18 U.S.C. § 1001 (1976), the first count, because we conclude that the section 1001 offense merges into the section 1058 conviction pursuant to the statutory interpretation rule of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

## FACTS

On March 1, 1980, Charles Noel Woodward, the defendant and appellant, arrived with his wife Diane at Los Angeles International Airport on an incoming flight from Brazil. Woodward filed a U.S. Customs declaration form on which he stated that neither he nor any member of his family was carrying monetary instruments in excess of $5,000 into the United States. Under 31 U.S.C. § 1101 (1976), Woodward was required to report any such currency in excess of $5,000.

While the Woodwards were being processed through customs, Customs inspectors determined that Woodward was a fugitive from prosecution in Greece. The inspectors also noticed an unnatural-looking bulge under Diane Woodward's clothing. When they told Woodward that his wife would be taken to a private room for a secondary

[*] The Honorable Shiro Kashiwa, Associate Judge, U.S. Court of Claims, sitting by designation.

search, Woodward admitted that he and his wife were carrying about $22,000 in unreported United States currency. A subsequent search of Diane Woodward revealed $10,000 in $100 denomination bills concealed in a money belt secured about her waist. Charles Woodward produced approximately $12,000, which he had hidden in his boot.

Following the discovery of the money, Woodward was interviewed by Customs Agents Donald Shruhan and Robert Olson in a small search room at the airport. The agents asked Woodward to explain the circumstances surrounding his transportation of the unreported currency. Woodward told him that the money came from an insurance settlement relating to a burglary he had suffered while in Belgium. During this interview, Woodward also said that while he was in Belgium, an unidentified person at the U.S. Embassy had informed him that he was required to declare the currency to customs officials. But Woodward added that he did not report the currency because he thought that the requirement applied only to "personal money," and that "insurance money" was separate.

Following the interview, which according to Agent Olson lasted between fifteen and twenty minutes, Woodward was permitted to leave the airport. Customs officials retained all but $1,560 of the unreported funds, however, pending forfeiture proceedings pursuant to 31 U.S.C. § 1102(a)(1976). Later, Woodward undertook a series of efforts to obtain remission of the seized funds, pursuant to the authority of 31 U.S.C. § 1104 (1976). He wrote to the Director of Customs, and on March 27, 1980, he met with two customs agents in his apartment. In November, 1980, Woodward visited the office of Ronald Edelstein, Chief of Fines, Penalties, and Forfeitures for the Customs Service, in San Pedro, California. Edelstein advised Woodward to contact Assistant United States Attorney Steven Pet-

ersen in Los Angeles to obtain information about the status of his case.

On December 11, Woodward met with Petersen in Petersen's office. Woodward volunteered the entire story of the unreported currency. In contrast to the story Woodward told the customs investigators at the airport, however, Woodward told Petersen that he did not declare the currency on the form because a vice-consul in South Africa had told him that insurance proceeds could be declared orally.

At no time during his airport detention and interrogation or subsequent conversations with Government officials was Woodward informed that he could be subject to criminal prosecution and that any statement he made could be used against him in such a proceeding. Yet the Justice Department on December 16, 1980 filed a two-count indictment charging Woodward with violating 18 U.S.C. § 1001 and 31 U.S.C. § 1101 by failing to declare the currency in excess of $5,000 that he was carrying. At trial, the Government relied upon the inconsistencies among Woodward's statements to help establish that he had known of the reporting requirement.

Woodward was convicted on both counts. On the 18 U.S.C. § 1001 count, he was sentenced to six months in prison; on the 31 U.S.C. § 1058 count (which punishes violations of 31 U.S.C. § 1101 (1976)), he received a consecutive sentence of three years of probation. Also, Woodward was ordered to inform any future employer of this criminal record. From these convictions, Woodward now appeals.

## I

*Merger of 18 U.S.C. § 1001 and 31 U.S.C. § 1058.*

The two counts of Woodward's indictment charged him with two separate offenses based on the exact same conduct: His false declaration that he was not carrying over $5,000 in United States currency.[1]

---

1. Count One alleged that

 On or about March 1, 1980, in Los Angeles County, within the Central District of California, defendant CHARLES NOEL WOOD-

WARD knowingly and willfully made a false, fictitious and fraudulent statement and representation as to material facts in a matter within the jurisdiction of the United States

The first count charged that Woodward had willfully made a false statement to the Government when he submitted the false Customs declaration, in violation of 18 U.S.C. § 1001, the statute that punishes fraud against the United States Government. The second in effect alleged that the submission of the false declaration violated the currency reporting statute, 31 U.S.C. § 1101, and was therefore punishable under 31 U.S.C. § 1058, which provides criminal sanctions for such violations. Due to the unusual combination of criminal charges pressed against Woodward stemming from the same overt act, we withdrew the case from submission and requested additional briefs in order to consider two questions: (1) whether 18 U.S.C. § 1001 can properly be applied to convict a traveler who violates the currency reporting statute, and (2) if so, whether a defendant can be separately and cumulatively punished for section 1001 and section 1101 violations arising from the same occurrence.

The first question has since been answered in the affirmative. In *United States v. Duncan,* 693 F.2d 971, 975 (9th Cir.1982), this circuit ruled that a defendant may be charged and convicted under 18 U.S.C. § 1001 even though 31 U.S.C. § 1058 expressly prohibits the same conduct. But *Duncan* did not involve, and thus did not decide, the question whether multiple punishments under both section 1001 and section 1058 may be aggregated consistently with the rule of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[2] We now answer that question in the negative.

In *Blockburger v. United States,* 284 U.S. at 304, 52 S.Ct. at 182, the Supreme Court laid down the basic rule that still governs the question whether a defendant can be punished cumulatively for one instance of conduct that violates two statutory provisions. "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not." *Accord, Dixon v. Dupnik,* 688 F.2d 682, 684 (9th Cir.1982); *United States v. Goodheim,* 686 F.2d 776, 780 (9th Cir.1982); *United States v. Sanford,* 673 F.2d 1070, 1073 (9th Cir.1982).[3] Where analysis under

Customs Service, an agency of the United States, in that defendant CHARLES NOEL WOODWARD filed United States Customs Form 6059–B with officials of the United States Customs Service on which form he indicated that neither he nor any member of his family was carrying monetary instruments in excess of $5,000.00 into the United States, whereas in truth and fact as defendant CHARLES NOEL WOODWARD then and there well knew, he was carrying monetary instruments in excess of $5,000.00, that is, over $11,000.00 in cash, and his wife Diane Vee Woodward was carrying monetary instruments in excess of $5,000.00, to wit, $10,000.00 in cash.

Count Two alleged that

On or about March 1, 1980, in Los Angeles County, within the Central District of California, defendant CHARLES ·NOEL WOODWARD, having knowingly transported and caused to be transported from Brazil into the United States monetary instruments in excess of $5,000.00, did willfully fail to file a report with the United States Customs Service in violation of Title 31, United·States Code, Section 1101, and regulations thereunder.

2. In one previously reported case, we have sustained multiple convictions under both 31 U.S.C. § 1058 and 18 U.S.C. § 1001. *United States v. Moore,* 638 F.2d 1171 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). However, the appellant in *Moore* did not at any stage raise a claim that the *Blockburger* rule bars such multiple convictions. The court likewise did not discuss the issue. Since the *Moore* decision created no binding precedent concerning the question, it remains open for resolution at this time. *See United States v. Tucker Truck Lines,* 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).

3. Although Double Jeopardy Clause concerns certainly lie beneath the *Blockburger* rule, *see Dixon v. Dupnik,* 688 F.2d at 684, where federal statutes form the basis for prosecution, the *Blockburger* test functions strictly as a guide to Congress's intent. *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981); *see also id.* at 345, 101 S.Ct. at 1145 (Stewart, J., concurring) (disagreeing with this interpretation). This conclusion stems from the holding in *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), that "the role of the [Double Jeopardy] guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."

the *Blockburger* rule reveals that two statutory provisions describe the same offense, the Supreme Court has consistently held that the two provisions will not be construed to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent. *See Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980). We must therefore examine the elements of 18 U.S.C. § 1001 and 31 U.S.C. § 1058 to determine whether each requires proof of a fact that the other does not.[4]

■ 18 U.S.C. § 1001,[5] as applied to a person who fails to properly declare currency in excess of $5,000, requires proof of elements strikingly similar to those necessary to procure a criminal conviction under the currency reporting statutes, 31 U.S.C. §§ 1101[6] and 1058.[7] A section 1001 conviction requires proof that the defendant (1) willfully falsified (2) a material fact (3) in a statement made with regard to any matter within the jurisdiction of a United States

agency. *See United States v. Rose,* 570 F.2d 1358, 1363 (9th Cir.1978). A conviction under 31 U.S.C. § 1058 necessarily entails proof of all of these elements. 31 U.S.C. § 1052(k)(1976) expressly states that "[f]or the purposes of section 1001 of Title 18 the contents of reports required under any provision of this chapter are statements and representations in matters within the jurisdiction of an agency of the United States." And in *United States v. Masters,* 612 F.2d 1117, 1122 (9th Cir.1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 134, 66 L.Ed.2d 57 (1980), we held that the concealed fact that a defendant was carrying over $5,000 in unreported currency was "material" for purposes of section 1001. Finally, section 1058 provides only for punishment of "willful" violations of the section 1101 reporting requirement.

■ In our view, the only "fact" that an 18 U.S.C. § 1001 conviction might possibly require, but that a 31 U.S.C. § 1101 conviction does not, is some affirmative misrepresentation on the part of the defendant.

---

4. There is no question that in this particular case, proof of the facts necessary to convict Woodward of violating 31 U.S.C. § 1101 and 1058 established guilt under 18 U.S.C. § 1001 as well. However, this does not alone satisfy the *Blockburger* test. As *Blockburger* itself stresses, 284 U.S. at 304, 52 S.Ct. at 182, the test focuses upon whether the *elements* of either statutory offense are completely overlapped by the other. *See United States v. Ching,* 682 F.2d 799, 802 (9th Cir.1982). *But cf. Whalen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980) (Court concluded that even though a D.C. statute punishing killing in course of a felony may be violated without establishing all elements of rape where a different underlying felony is involved, the *Blockburger* test precludes an additional penalty for 'simple rape' where rape is in fact the underlying crime).

5. 18 U.S.C. § 1001 (1976) provides:
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than

$10,000 or imprisoned not more than five years, or both.

6. 31 U.S.C. § 1101 (1976) provides, in pertinent part:
 (a) Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—
 (1) transports or causes to be transported monetary instruments—
 (A) from any place within the United States to or through any place outside the United States, or
 (B) to any place within the United States from or through any place outside the United States, or
 (2) receives monetary instruments at the termination of their transportation to the United States from or through any place outside the United States
 in an amount exceeding $5,000 on any one *occasion shall file a report or reports in accordance with subsection (b) of this section.

7. 31 U.S.C. § 1058 (1976) provides:
 Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned for not more than one year, or both.

Section 1058 would plainly provide a basis for prosecuting a traveler who said nothing at all or who submitted a blank form when carrying monetary instruments in excess of $5,000, so long as the traveler knew both that he was carrying the instruments and that he was required by law to report them. *See United States v. Carrier,* 654 F.2d 559, 561 (9th Cir.1981) (requirement that act be "willful" means that it must be done "deliberately and with knowledge," citing *Hirsch v. INS,* 308 F.2d 562, 567 (9th Cir.1962)).[8]

■ 18 U.S.C. § 1001 by its express terms reaches any defendant who willfully "conceals or covers up" a material fact. A willful failure to file a customs report on currency in excess of $5,000 (as opposed to an innocent failure, which could not be prosecuted under 31 U.S.C. § 1058) is a form of "concealment." We have previously held that "concealment" may be punished under 18 U.S.C. § 1001. *United States v. Masters,* 612 F.2d 1117, 1122 (9th Cir.1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 134, 66 L.Ed.2d 57 (1980) (gems concealed on person of Master's companion). We conclude that 18 U.S.C. § 1001 could be applied to punish a traveler who willfully fails to file a report listing currency in excess of $5,000. It follows that a conviction under 31 U.S.C. § 1058 necessarily includes all elements of an 18 U.S.C. § 1001 violation. The *Block-burger* test therefore yields a strong presumption that Congress intended a willful failure to report currency to constitute a single offense.

■ The *Blockburger* test is a rule of statutory construction giving rise to a presumption against multiple punishment where its application as here results in a determination that the conduct is "one offense." *See Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983). The presumption is overcome only by a clear indication of congressional intent to the contrary. *See Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980). We ask, therefore, whether we can find any "clear indication" of congressional intent to allow cumulative punishment under both statutory sections.

The history of 18 U.S.C. § 1001 does not show such an intent, in the first instance because that history was already complete by 1971 when the currency reporting statute was passed. Section 1001 was amended to its present form largely to provide a criminal sanction for reporting statute violators where other statutory sanctions are unavailable. *See United States v. Gilliland,* 312 U.S. 86, 93–95, 61 S.Ct. 518, 522–23, 85 L.Ed. 598 (1941). In considering a similar question, we have decided that section 1001 should be presumed not to apply in a manner that would duplicate the criminal sanctions imposed under other law. In *United States v. Rose,* 570 F.2d 1358, 1363 (9th Cir.1978), Judge Wright stated for the court that

> properly construed, [section 1001] serves as a catch-all, reaching those false representations that might 'substantially impair the basic functions entrusted by law to [the particular] agency,' but which are not prohibited by other statutes. The legislative history reveals no evidence of an intent to pyramid punishment for of-

---

**8.** The Fifth Circuit has suggested in dictum that such criminal liability under 31 U.S.C. § 1058 premised upon a "mere" willful failure to file prevents section 1058 from containing all elements necessary for an 18 U.S.C. § 1001 conviction. *United States v. Anderez,* 661 F.2d 404, 408 n. 12 (5th Cir.1981). But the Fifth Circuit's seeming assumption in *Anderez* that a section 1001 conviction requires some affirmative misrepresentation was short-lived. *See United States v. Hajecate,* 683 F.2d 894, 898–99 (5th Cir.1982), where the court rejected a claim that proof of a false statement is necessary under section 1001 with the comment that "[s]ection 1001 renders illegal intentional falsification and concealment, as well as false statements." The premise of the footnote in *Anderez* is certainly not the law in this circuit. *See United States v. UCO Oil Co.,* 546 F.2d 833, 836 (9th Cir.1976) (characterizing scope of section 1001 with statement that "[t]he law of fraud knows no difference between express representation on the one hand and implied misrepresentation or concealment on the other") (quoting *Charles Hughes & Co. v. SEC,* 139 F.2d 434, 437 (2d Cir.1943)), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

fenses covered by another statute as well as by § 1001.

Likewise, no clear indication of Congress's intent to impose double punishments under 18 U.S.C. § 1001 and 31 U.S.C. § 1058 is found in the rather sparse legislative history of the latter statute. The legislative statements generally suggest that Congress did not consider the possibility of double punishment when enacting the Currency and Foreign Transactions Reporting Act.[9] The most comprehensive and typical statement is contained in a Senate Report that accompanied the legislation:

> The significance of requiring reports is that it provides the Justice Department with another means of obtaining a conviction. The mere failure to file a report would constitute a criminal violation much easier to establish compared to proving the funds transported were illegally acquired or were to be used for an illegal purpose. Those who fail to report would be subject to a criminal penalty of a year in prison, a $1,000 fine, or both. If the failure to report was committed in furtherance of the commission of any other violation of Federal law, or as part of a pattern of illegal activity involving transactions exceeding $100,000 a year, the person who fails to file a report is subject to a much stiffer penalty—five

years in jail, or a $500,000 fine, or both. Finally, any unreported currency is subject to seizure and forfeiture to the United States and those who fail to make required reports are liable for a civil penalty equal to the amount of currency transported less any amount already seized and forfeited.

S.Rep. No. 1139, 91st Cong., 2d Sess. 7 (1970). From this discussion, we glean no evidence of any kind that Congress intended to impose section 1001 penalties upon currency reporting violators in addition to those provided by 31 U.S.C. § 1058. Certainly, the "clear indication" that would be necessary to override the *Blockburger* test is not manifest.[10] We consequently must apply the *Blockburger* rule of statutory construction to hold that Congress intended the failure to report currency in excess of $5,000 upon entry into or departure from the United States to constitute only a single offense.

For the foregoing reasons, we hold that 18 U.S.C. § 1001 is an included offense within a conviction under 31 U.S.C. § 1058 stemming from a willful violation of 31 U.S.C. § 1101.[11] Where a defendant is improperly convicted of violating both section 1001 and another statute that includes all

**9.** In addition to the material quoted in text below, *see* H.Rep. No. 975, 91st Cong., 2d Sess. 21 (1970), U.S.Code Cong. & Admin.News 1970, p. 4394 (mentioning that "relatively modest" civil penalty sanction will be of great help in enforcing the Act); 116 Cong.Rec. 16,954 (1970) (remarks of Rep. Patman) (describing "penalties" without cross-reference to section 1001); *Hearings on S. 3678 and H.R. 15073 Before the Subcommittee on Financial Institutions of the Senate Comm. on Banking and Currency,* 91st Cong., 2d Sess. 258 (1970) (statement of Robert H. Morgenthau that the proposed criminal sanctions of the act would be a "tremendous help" in preventing illegal currency shipments). None of these references demonstrate any awareness that section 1001 would apply to currency smugglers, much less an intent to add the section 1001 sanctions to those provided under the Act. *See United States v. Duncan,* 693 F.2d 971, 986 (9th Cir. 1982) (Fletcher, J., dissenting).

**10.** We reject the Fifth Circuit's conclusion concerning legislative intent in *United States v.*

*Anderez,* 661 F.2d 404, 408 n. 12 (5th Cir.1978). That court concluded Congress must have intended to permit convictions under both statutes. But the legislative history cited in support of that conclusion shows at most that Congress did not intend to preclude conviction under 18 U.S.C. § 1001 by enacting 31 U.S.C. § 1101. *See id.* at 406–08.

**11.** We recognize that a certain degree of incongruity inheres in the notion that 18 U.S.C. § 1001, which carries a maximum penalty of five years in prison and $10,000 fine, is "included" within 31 U.S.C. § 1058, which carries a maximum penalty of one year in prison and a $1,000 fine. We must stress, however, that we are merely following the presumed intent of Congress in this regard. This circuit has previously confronted the anomolous fact that Congress chose to punish as a misdemeanor conduct that was already a felony under other law without finding any undue inconsistency. *Compare United States v. Duncan,* 693 F.2d 971, 975 (9th Cir.1982), *with id.* at 985–86 (Fletcher, J., dissenting). *See also infra* n. 12.

elements of section 1001, our practice has been to vacate the section 1001 conviction. *E.g., United States v. Rose,* 570 F.2d 1358, 1363 (9th Cir.1978). This practice flows from the general rule that a conviction for a lesser included offense merges into a conviction for the greater offense.[12] *See United States v. Parson,* 452 F.2d 1007, 1009 (9th Cir.1971); *Whalen v. United States,* 379 A.2d 1152, 1158 (D.C.1977), *rev'd on other grounds,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Accordingly, Woodward's conviction on Count One is reversed.

## II

### Miranda *Violation*

Woodward also contends that his conviction should be reversed because it was based upon statements obtained in violation of the rights protected by the rule of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Woodward's *Miranda* claim focuses upon the fact that the various Customs and Justice Department officials with whom he spoke never advised him that his statements might be used as incriminating evidence in a later criminal prosecution. He contends that had he been given such a warning, he would not have made assertions to Agents Shruhan and Olson and to Assistant U.S. Attorney Petersen that were inconsistent with the statements he made to Customs inspectors at the airport.

We need not decide whether Woodward's *Miranda* rights were violated because we conclude that even if statements were obtained in violation of *Miranda,* their admission into evidence was harmless error beyond a reasonable doubt and the conviction must be sustained.

To establish a violation of 31 U.S.C. § 1058, Government prosecutors were required to prove only two things: (1) that Woodward attempted to carry unreported currency in excess of $5,000 into the United States, and (2) that he did so deliberately, knowing that he was required to submit a currency report to U.S. Customs officials. Even excluding all statements obtained from the defendant after he claims he should have been given *Miranda* warnings, the evidence against Woodward on both points was overwhelming. Woodward signed and submitted a customs declaration form that stated that neither he nor any family member was carrying over $5,000. Evidence at trial indicated that Woodward was familiar with the form. The money was found secreted in Woodward's boot and in a money belt concealed under his wife's clothing. Woodward's admission to the customs agents that he had been told of his legal obligation to declare the currency, and the "inconsistency" between this statement and later statements made by Woodward, were immaterial. Woodward's trial defense that his failure to declare the currency was the product of misunderstanding or mistake was without support in the record and was therefore totally implausible.

For these reasons, we conclude that any error in the admission of statements made by Woodward to government officials after Woodward claims he should have received *Miranda* warnings was harmless beyond a reasonable doubt.[13] The conviction under 31 U.S.C. § 1058 is affirmed. *See United States v. Duncan,* 693 F.2d 971, 979 (9th Cir.1982); *United States v. Lemon,* 550 F.2d 467, 471 (9th Cir.1977); *United States v.*

---

**12.** *Parson* speaks of the lesser offense merging into the "more serious" offense. 452 F.2d at 1009. Since the penalty for violation of section 1001 is more severe than the penalty under section 1058, section 1001 is arguably the "more serious" offense. However, this court in *Rose* vacated the defendant's conviction under section 1001 rather than his conviction under 18 U.S.C. § 542, even though the penalty under section 542 (imprisonment of not more than two years and fine of not more than $5,000) is less than the penalty under section 1001. In

light of *Rose,* the reference in *Parson* to the "more serious" offense must be taken as a reference to the "greater" as opposed to the "lesser included" offense.

**13.** For similar reasons, we need not consider whether the statements made by Woodward after the March 1 airport incident should have been excluded on the authority of *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1976).

*Casimiro-Benitez,* 533 F.2d 1121, 1124–26 (9th Cir.), *cert. denied,* 429 U.S. 926, 97 S.Ct. 329, 50 L.Ed.2d 295 (1976).

## CONCLUSION

 The conviction under 31 U.S.C. § 1058 is affirmed; the conviction under 18 U.S.C. § 1001 is reversed. When one of several convictions is reversed because of merger, the general rule in this circuit is that the entire sentence must be vacated and the case remanded for reconsideration of the proper sentence to be imposed. *See United States v. Diogenes,* 638 F.2d 125, 128 (9th Cir.1981); *United States v. Oropeza,* 564 F.2d 316, 324 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1976); *United States v. Parson,* 452 F.2d 1007, 1009 (9th Cir.1971). From the record in the present case, however, it appears that Woodward has fully served his sentence on Count One (the invalid section 1001 conviction), a six month prison term that began in March, 1981. All that remains is the three year probation period imposed under Count Two.[14] Under these circumstances, the district court upon remand may reduce or vacate this probation period, but cannot increase it or order the defendant to serve an additional prison term. Otherwise, an illegal cumulation of punishment would result. *United States v. Edick,* 603 F.2d 772, 778 (9th Cir.1979). Subject to this consideration, the case is remanded for resentencing.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**14.** As part of Woodward's sentence, the district court attempted to impose a requirement that Woodward inform any future employer of his criminal record. The requirement apparently is not intended as a condition of probation and has no stated termination date. Neither 31 U.S.C. § 1058 nor 18 U.S.C. § 1001 authorizes such a penalty. Nor would the penalty fall within the range of discretion accorded a trial judge by the Federal Probation Act, 18 U.S.C. §§ 3651–3656 (1976). *See Higdon v. United States,* 627 F.2d 893, 897–900 (9th Cir.1980); *United States v. Consuelo-Gonzalez,* 521 F.2d 259, 263–64 (9th Cir.1975) (en banc). The district court therefore did not have discretion to impose such a condition, and this portion of Woodward's sentence is void.